**Dr. Osric H. ARMSTRONG, Appellant,**

v.

**Osric H. ARMSTRONG, Executor of the Estate of Florence Armstrong, Appellee.**

No. 922.

Supreme Court of Alaska.

June 7, 1968.

William M. Erwin and James L. Johnston of Savage, Erwin & Curran, Anchorage, for appellant.

Karl Johnstone and Eugene F. Wiles of Delaney, Wiles, Moore & Hayes, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, Justices.

## OPINION

RABINOWITZ, Justice.

We are called upon to resolve choice-of-law questions arising from an automobile accident which occurred in the Yukon Territory, Dominion of Canada. As a result of the accident, appellant instituted a personal injury action against his wife in the Superior Court of the State of Alaska.[1] Appellee moved for summary judgment on the ground that the laws of Yukon Territory, Dominion of Canada, prohibit interspousal suits based upon negligently inflicted harms occurring while the parties were lawfully married and living together as husband and wife.[2] Prior to the date on

1. In this same action appellant also joined Lumbermen's Mutual Casualty Company alleging the latter had breached its insurance contract with appellant in regard to payment for the total destruction of appellant's vehicle. This particular facet of the litigation is not before us in this appeal.

2. Subsection (3), § 7, ch. 70, Revised Ordinances of the Yukon Territory

which this accident took place, it had been established in Alaska, by our decision in Cramer v. Cramer,[3] that interspousal actions for negligent torts committed while the parties were married could be maintained.[4]

The superior court granted appellee's motion for summary judgment and dismissed appellant's cause of action.[5] In reaching this conclusion, the superior court held in part:

> That the conflicts laws rule in Alaska, Lillegraven v. Tengs, 375 P.2d 139 and in the vast majority of jurisdictions, Richards v. United States, 369 U.S. 1, 82 S.Ct. 585 [7 L.Ed.2d 492]; is that all matters going to the basis of the right of action or affecting substantive rights of the parties are governed by the law of the place where the wrong or accident took place.

Thus, in this appeal we are faced with the first-impression question of what choice-of-law rule our courts should adopt concerning interspousal immunities and liabilities in multistate tort actions where the litigants are domiciliaries of Alaska and their only contacts with the situs of the tort are

transitory in nature. Lillegraven v. Tengs [6] and Marine Construction & Design Co. v. Vessel TIM [7] are not dispositive of the question raised in this appeal. It is contended that these decisions adopted the general conflict of laws rule whereby creation of tort liability is governed by the law of the place of the wrong.[8] Neither *Lillegraven* nor *Vessel TIM* had this effect. The latter decision did not involve a tort action but rather raised questions concerning the applicable statute of limitations regarding liens which were created under the laws of the State of Washington. In deciding that the limitations period of the State of Washington was controlling, we emphasized the particular policy considerations involved and in part adopted an approach not dissimilar from that which was taken by the New York Court of Appeals in the landmark case of Babcock v. Jackson.[9] We note that the *Babcock* decision, which signaled a full scale assault upon the lex loci delicti conflict of laws rule, was rendered subsequent to our opinion in *Lillegraven*. Although we did allude generally to the place-of-wrong conflicts rule in our decision in *Lillegraven*, the doctrine of lex

---

(1958), part of the Married Women's Property Ordinance, provides:
> Subject to subsections (1) and (2), no husband or wife is entitled to sue the other in tort, except in respect of a tort committed while living apart under a separation agreement or under a decree or order for judicial separation.

3. 379 P.2d 95 (Alaska 1963).

4. Four years later, in Hebel v. Hebel, 435 P.2d 8 (Alaska 1967), this court decided that an unemancipated minor could sue for personal injuries caused by the negligence of his parent.

5. After notice of appeal to this court was filed, appellant moved for substitution of himself as executor of the estate of Florence Armstrong.

6. 375 P.2d 139 (Alaska 1962).

7. 434 P.2d 683 (Alaska 1967).

8. See Restatement of Conflict of Laws § 378 (1934), which reads: "The law of the place of wrong determines whether a person has sustained a legal injury."
In § 384 it is provided:

> (1) If a cause of action in tort is created at the place of wrong, a cause of action will be recognized in other states.
> (2) If no cause of action is created at the place of wrong, no recovery in tort can be had in any other state.
Commen b provides:
> The statement in Subsection (2) is applicable although, in the state where the action is brought, a cause of action would have been created under the circumstances either by the common law or by statute.

9. 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963). In the *Vessel TIM* case, we pointed out at n. 26 that:
> [A]ppellee contracted for and received labor and materials in the State of Washington. Both appellant and appellee Seldovia are Washington corporations * * *. Further, after the materials and labor were furnished in Washington, the vessels were thereafter removed by Seldovia to Alaska.

loci delicti was not employed as a basis for the actual decision reached there.[10]

██ In light of what we consider the better reasoned and more persuasive judicial precedents,[11] we hold that the law of the litigants' matrimonial domicile should be given priority over the law of the place of the wrong in determination of interspousal liabilities and immunities in tort actions.

Chief Justice Traynor's opinion in Emery v. Emery[12] marks the first significant departure from the then general conflict of laws rule that the lex loci delicti governs disabilities to sue and immunities from suit arising out of family relationships. In *Emery* two unemancipated minors were injured in an Idaho automobile accident which occurred while their unemancipated brother was operating a vehicle pursuant to the direction and control of their father. In a negligence action against the father and brother, the California court rejected defendant's reliance upon Idaho's family immunity rule. In reaching this result, Justice Traynor said:

> [I]t is first necessary to decide whether that question should be determined by the law of California or that of Idaho. This choice of law problem is one of first impression in this state. The possible choices in cases like the present one are

three: the law of the place where the injury occurred, the law of the forum, and the law of the state in which the family is domiciled. * * * We think that disabilities to sue and immunities from suit because of a family relationship are more properly determined by reference to the law of the state of the family domicile. That state has the primary responsibility for establishing and regulating the incidents of the family relationship and it is the only state in which the parties can, by participation in the legislative processes, effect a change in those incidents. Moreover, it is undesirable that the rights, duties, disabilities, and immunities conferred or imposed by the family relationship should constantly change as members of the family cross state boundaries during temporary absences from their home. Since all of the parties to the present case are apparently domiciliaries of California, we must look to the law of this state to determine whether any disabilities or immunities exist.[13]

Haumschild v. Continental Casualty Co.[14] involved a factual situation similar to the case at bar. There the husband and wife, both domiciliaries of Wisconsin, were involved in an automobile accident in California. The wife sued the husband in Wisconsin where the trial court dismissed the

**10.** In Lillegraven v. Tengs, 375 P.2d 139, 140–141 (Alaska 1962) (footnotes omitted), we said in part:

> In her amended complaint plaintiff states that the operation of defendant's vehicle and the rights of the parties were governed by the British Columbia Motor Vehicle Act. This reliance on the foreign statute is in accord with the general rule in conflict of laws— which we apply in this case—whereby the creation of tort liability is governed by the law of the place of the injury. This rule, however, applies only with relation to the substantive rights of the parties—it being the traditional approach of the American courts to distinguish between substance and procedure and hold that procedural matters are governed by the law of the forum. In *Lillegraven* we went on to hold that under the circumstances of the case no

good reason existed "why this state's policy as to limitation of tort actions should give way to the differing view of a foreign country". Id. at 141–142.

**11.** Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218 (1955); Thompson v. Thompson, 105 N.H. 86, 193 A.2d 439, 96 A.L.R.2d 969 (1963); Koplik v. C. P. Trucking Corp., 27 N.J. 1, 141 A.2d 34 (1958); Haumschild v. Continental Cas. Co., 7 Wis.2d 130, 95 N.W.2d 814 (1959); Ford, Interspousal Liability for Automobile Accidents in the Conflict of Laws: Law and Reason Versus the Restatement, 15 U.Pitt.L.Rev. 397 (1954).

**12.** 45 Cal.2d 421, 289 P.2d 218 (1955).

**13.** 45 Cal.2d 421, 289 P.2d 218, 222–223 (1955).

**14.** 7 Wis.2d 130, 95 N.W.2d 814 (1959).

complaint on the ground that the law of the place where the tort occurred did not allow interspousal tort actions. Acknowledging that a majority of jurisdictions apply the lex loci delicti conflict of laws rule, the Wisconsin Supreme Court overruled several of its own precedents and applied the law of Wisconsin, the domicile of the parties. In reaching this result, the court relied in part upon Emery v. Emery [15] and Koplik v. C. P. Trucking Corp.,[16] where the New Jersey court stated:

[W]e hold the view that even where an actual conflict of laws problem is directly presented, it is sensible and logical to have disabilities to sue and immunities from suit arising from the family relationship determined by reference to the law of the state of the family domicile when the suit is brought in that state. Otherwise, the *lex loci* will be permitted to interfere seriously with a status and a policy which the state of residence is primarily interested in maintaining.

The *Emery, Haumschild,* and *Koplik* choice-of-law rule has received substantial support in other jurisdictions.[17] We also note that the latest draft of the Restatement of Conflict of Laws [18] is in accord with the approach of these authorities. Where pertinent this tentative draft reads:

In accordance with the rule of § 379, whether one member of a family is immune from tort liability to another member of the family is determined by the local law of the state of their domicile.[19]

15. 45 Cal.2d 421, 289 P.2d 218 (1955).

16. 27 N.J. 1, 141 A.2d 34, 40 (1958).

17. Wartell v. Formusa, 34 Ill.2d 57, 213 N.E.2d 544 (1966); Flogel v. Flogel, 257 Iowa 547, 133 N.W.2d 907 (1965); Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66 (1966); Thompson v. Thompson, 105 N.H. 86, 193 A.2d 439, 96 A.L.R.2d 969 (1963); McSwain v. McSwain, 420 Pa. 86, 215 A.2d 677 (1966). Contra Shaw v. Lee, 258 N.C. 609, 129 S.E.2d 288 (1963); Oshiek v. Oshiek, 244 S.C. 249, 136 S.E.2d 303 (1964).

In Clark v. Clark, 107 N.H. 351, 222 A.2d 205, 207 (1966), the court said:

In years gone by the choice of law rule of such cases was thought to be settled and the governing law was invariably that of the place where the injury occurred. Restatement, Conflict of Laws, ss. 377–383 (1934); Gray v. Gray, 87 N.H. 82, 174 A. 508, 94 A.L.R. 1404. Leflar, The Law of Conflict of Laws, s. 110 (1959). That old rule is today almost completely discredited as an unvarying guide to choice of law decision in all tort cases due in no small part to the trenchant criticism of Cheatham, Cook, Currie, Lorenzen, Stumberg and Yntema. No conflict of laws authority in America today agrees that the old rule should be retained. See e. g. texts and articles by Cavers, Ehrenzweig, Hancock, Leflar, Morris, Reese, Rheinstein, Trautman, Traynor, von Mehren and Weintraub, to mention only a few. No American court which has felt free to re-examine the matter thoroughly in the last decade has chosen to retain the old rule. Lauritzen v. Larson, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254; Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365; Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1; Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796; Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W. 2d 408; Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218; Wilson v. Faull, 27 N.J. 105, 141 A.2d 768; Restatement (Second), Conflict of Laws, s. 379 (Tent. Draft No. 9). It is true that some courts, even in recent decisions, have retained it. Shaw v. Lee, 258 N.C. 609, 129 S.E.2d 288; Landers v. Landers, 153 Conn. 303, 216 A.2d 183 (1966). But their failure to reject it has resulted from an unwillingness to abandon established precedent before they were sure that a better rule was available, not to any belief that the old rule was a good one. The only virtue of the old rule, apart from the fact of its pre-existence, was that it was easy for a court to apply. It was easy to apply because it was a mechanical rule. It bore no relationship to any relevant consideration for choosing one law as against another in a torts-conflicts case.

18. Restatement (Second) of Conflict of Laws § 390(g) (Tent. Draft No. 9, 1964).

19. Restatement (Second) of Conflict of Laws § 379 (Tent. Draft No. 9, 1964), reads:
(1) The local law of the state which has the most significant relationship

Adopting the *Emery, Haumschild,* and *Koplik* choice-of-law rule, we conclude that the superior court's dismissal of appellant's cause of action should be set aside. Under the facts appearing in this record, the appropriate choice-of-law rule in determination of interspousal immunity was that of the parties' matrimonial domicile, not that of the Yukon Territory, the place of the wrong. Here the record shows that appellant and his wife had been residents of the State of Alaska for twenty-seven years prior to the accident; at the time of the accident they were legally married and had been living together as husband and wife. During this twenty-seven year period, appellant practiced as a physician and surgeon in Alaska. It was also shown that the insurance on the parties' vehicle had been contracted for and purchased in the State of Alaska, and that all of the parties' properties were located within the State of Alaska. The record further shows that the accident occurred on the return portion of a trip the parties had taken to visit Mrs. Armstrong's mother in the State of Washington. The parties' only connection with Canada was temporarily to "drive through it coming to and going from the State of Alaska."[20] In these circumstances we believe that adherence to the mechanical lex loci delicti choice-of-law rule would frustrate the policy of the State of Alaska in regard to interspousal causes of action and liabilities in tort, and would give unwarranted precedence to the laws of a jurisdiction with which the parties' contacts were merely fortuitous, transitory, and insubstantial.

In deciding not to adopt the choice-of-law rule that the place of the wrong governs interspousal immunities and liabilities in tort actions, we find it unnecessary at this time to decide whether or not we will adopt the Babcock v. Jackson criterion for determination of choice-of-law questions arising out of tortious conduct. In *Babcock* the court characterized the issue before it in the following manner:

> Shall the law of the place of the tort *invariably* govern the availability of relief for the tort or shall the applicable choice of law rule also reflect a consideration of other facts which are relevant to the purposes served by the enforcement or denial of the remedy.[21]

After reviewing the criticism which has been levelled against the traditional choice-

---

with the occurrence and with the parties determines their rights and liabilities in tort.

(2) Important contacts that the forum will consider in determining the state of most significant relationship include:

(a) the place where the injury occurred,

(b) the place where the conduct occurred,

(c) the domicile, nationality, place of incorporation and the place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

(3) In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states.

20. In appellant's memorandum in opposition to the summary judgment, the following statement was made:

In the Spring of 1966 Dr. and Mrs. Armstrong left their home in Alaska by automobile to visit Mrs. Armstrong's mother in the State of Washington. After completion of their visit the plaintiff and his wife proceeded to their home at Palmer in the State of Alaska. They were driving their automobile, and after leaving the State of Washington traveled by ferry from Seattle to Victoria, British Columbia, drove the length of Vancouver Island and boarded a ferry at Kelsey Bay to Prince Rupert. At Prince Rupert they boarded the Alaska ferry to Haines. The time of arrival at Haines was 2:00 A.M. and the border station did not open until 7:00 A.M. Plaintiff and his wife desiring some breakfast and the only restaurant open being, apparently, a roadside cafe approximately two miles back from the border in Canadian territory, Mrs. Armstrong drove their automobile and was at the wheel when the automobile turned over.

21. 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 280–281, 95 A.L.R.2d 1 (1963).

of-law rule of lex loci delicti and its conceptual foundation in the vested rights doctrine,[22] Chief Judge Fuld said:

The 'center of gravity' or 'grouping of contacts' doctrine adopted by this court in conflicts cases involving contracts impresses us as likewise affording the appropriate approach for accommodating the competing interests in tort cases with multi-State contacts. Justice, fairness and 'the best practical result' * * * may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.

\* \* \* \* \* \*

[T]here is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction. Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented.[23]

■ We reserve for future decision whether we will join *Babcock's* adherents. In this appeal we choose not to follow the choice-of-law rule of lex loci delicti in determining matters of parental and family immunities and liabilities arising in the context of multi-state interests.[24] We hold that resolution of parental and family immunities and liabilities in such cases is to be determined by the law of the parties' domicile.

The superior court's judgment dismissing appellant's cause of action is reversed.

22. In Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 281, 95 A.L.R.2d 1 (1963), the court said that the vested rights doctrine would hold "that a right to recover for a foreign tort owes its creation to the law of the jurisdiction where the injury occurred and depends for its existence and exent solely on such law."

23. Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 283, 285, 95 A.L.R.2d 1 (1963); Watts v. Pioneer Corn Co., 342 F.2d 617 (7th Cir. 1965); Merchants Nat'l Bank & Trust Co. v. United States, 272 F.Supp. 409 (D.N.D.1967); Reich v. Purcell, Cal., 63 Cal.Rptr. 31, 432 P.2d 727 (1967); Myers v. Gaither, 232 A.2d 577 (D.C. App.1967); Wartell v. Formusa, 34 Ill. 2d 57, 213 N.E.2d 544 (1966); Fabricius v. Horgen, 257 Iowa 268, 132 N.W.2d 410 (1965); Wessling v. Paris, 417 S.W.2d 259 (Ky.1967); Kopp v. Rechtzigel, 273 Minn. 441, 141 N.W.2d 526 (1966); Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1963); Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967); Casey v. Manson Constr. & Eng'r Co., 428 P.2d 898 (Or.1967); Griffith v.

United Air Lines, Inc., 416 Pa. 1, 203 A. 2d 796 (1964); Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.E.2d 408 (1965).

Three jurisdictions have rejected *Babcock* outright: Friday v. Smoot, 211 A. 2d 594 (Del.1965); White v. King, 244 Md. 348, 223 A.2d 763 (1966); Browning v. Shackelford, 196 So.2d 365 (Miss. 1967).

24. Restatement (Second) of Conflict of Laws (Tent. Draft No. 9, 1964), provides:

Section 379. *The General Principle.*
(1) The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort.
Section 379A. *Personal Injuries.*
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties as to the particular issue involved, in which event the local law of the latter state will govern.