FOX, ADMX., APPELLANT, *v.* MORRISON MOTOR FREIGHT, INC., APPELLEE.

(No. 70-128—Decided March 3, 1971.)

*Messrs. Stewart & DeChant* and *Mr. Lawrence E. Stewart*, for appellant.

*Messrs. Arter & Hadden* and *Mr. Smith Warder*, for appellee.

DUNCAN, J. The sole issue involved herein is whether the Ohio law or the Illinois law should be applied in determining the amount of damages recoverable. Application of the law of the place where the injuries occurred would limit plaintiff's maximum recovery to the amount entered by the trial court. Ohio law places no limit on the amount of damages recoverable in a wrongful death action.

This court has never determined whether to apply another state's limitation of the amount of recovery in a wrongful death action brought in Ohio in a case where the occurrence causing death took place in the other state. Nevertheless, this court's dedication to the rule of *lex loci delicti* is far too deeply engrained in our cases to be realistically denied. See *Collins* v. *McClure* (1944), 143 Ohio St. 569; *Freas* v. *Sullivan* (1936), 130 Ohio St. 487; *Lyons* v. *Lyons* (1965), 2 Ohio St. 2d 243; *Ellis* v. *Garwood* (1958), 168 Ohio St. 241.

Of all the criteria generally set forth for use in the determination of a "choice of laws" (see Cheatham & Reese, Choice of the Applicable Law, 52 Columbia L. Rev. 959), rigid adherence to the rule of *lex loci delicti* has consistently satisfied only two—predictability of results, and ease in the determination of which law to apply. But would rote application of *lex loci delicti*, with its blindness to other operable facts, consistently produce a just result in a wrongful death action where the injuries causing the death of an Ohio resident occur in another state? We think not. Therefore, in such a case the automatic application of the rule of *lex loci delicti* must be abandoned.

R. C. 2125.01 provides a right of action for death caused by a wrongful act in another state for which a right to maintain an action and recover damages is given by a statute of such other state. Section 19a, Article I of the Ohio Constitution, prohibits laws establishing a limitation on damages in a civil action for death caused by the wrongful act of another. Such clearly-established public policy requires compensation to the spouse, children and other next of kin for all sufficiently demonstrated pecuniary injury resulting from the death. R. C. 2125.02.

Illinois, at the time of the accident herein, as revealed by the provisions of its law, apparently did not likewise evaluate the predicament of a decedent's next of kin, but made certain considerations favoring defendants in a wrongful death case, and presumably their insurers.[1]

In a wrongful death action brought in Ohio, a decision regarding damages, based upon solid Ohio public policy, could be seized upon as compelling reason to abjure the law of the place of the wrong.

Although we believe that a decision made on the basis of public policy in this state would be meritorious, a decision made solely on that basis would ignore other relevant aspects of the multi-state wrongful death problem. A public policy solution founded on the policy of the forum state requires only the discovery and application of that state's policy. If application of the rule of *lex loci delicti* is automatic, a decision based on the discovery and application of the public policy of the forum would be semi-automatic, the application of which would appear to ignore situations wherein the public policy of more than one state may well demand consideration. Such a situation would arise in the case at bar if the driver of defendant's truck were an Illinois resident and if the defendant were an Illinois corporation. Resting our decision

---

[1]In 1967, Illinois amended its wrongful death statute. Currently there is no limitation on the amount of damages recoverable. Section 2, Chapter 70, Illinois statutes.

on public policy in this case might well be adequate, but would be far too shortsighted to serve as a rule of law.

Although the majority of jurisdictions having cause to review *lex loci delicti* have rejected its continued automatic use,[2] appellee suggests that deviation from the law of the place of the wrong is so laden with trepidation because of innumerable problems with most complex and obscure solutions, that other "choice of law" rules do more violence to fairness than the firm rules they attempt to succeed. It is claimed that the abandonment of *lex loci delicti* by New York courts has generated confusion. *Babcock* v. *Jackson* (1963), 12 N. Y. 2d 473, 191 N. E. 2d 279; *Dym* v. *Gordon* (1965), 16 N. Y. 2d 120, 209 N. E. 2d 792; *Macey* v. *Rozbicki* (1966), 18 N. Y. 2d 289, 221 N. E. 2d 380; *Miller* v. *Miller* (1968), 22 N. Y. 2d 12, 237 N. E. 2d 877; *Tooker* v. *Lopez* (1969), 24 N. Y. 2d 569, 249 N. E. 2d 394, are cases illustrative of the problems that have arisen after the demise of *lex loci delicti*, particularly in cases involving host-guest, multi-state tort actions.

With full appreciation of the extent of the disturbance of the placidness of choice of laws under a mechanical rule of *lex loci delicti*, the facts of the case at bar classically

---

[2]Since 1965, these cases reflect a review of the doctrine of *lex loci delicti* by appellate courts, all of which have examined the rule and rejected its continued automatic use. *Armstrong* v. *Armstrong* (Alaska 1968), 441 P. 2d 699; *Schwartz* v. *Schwartz* (1968), 103 Ariz. 562, 447 P. 2d 254; *Reich* v. *Purcell* (1967), 67 Cal. 2d 551, 432 P. 2d 727; *Myers* v. *Gaither* (D. C. App. 1967), 232 A. 2d 577; *Wartell* v. *Formusa* (1966), 34 Ill. 2d 57, 213 N. E. 2d 544; *Watts* v. *Pioneer Corn Co.* (C. A. 7, 1965), 342 F. 2d 617; *Fabricius* v. *Horgen* (1965), 257 Iowa 268, 132 N. W. 2d 410; *Wessling* v. *Paris* (Ky. App. 1967), 417 S. W. 2d 259; *Beaulieu* v. *Beaulieu* (Me. 1970), 265 A. 2d 610; *Schneider* v. *Nichols* (1968), 280 Minn. 139, 158 N. W. 2d 254; *Mitchell* v. *Craft* (Miss. 1968), 211 S. 2d 509; *Clark* v. *Clark* (1966), 107 N. H. 351, 222 A. 2d 205; *Pfau* v. *Trent Aluminum Co.* (1970), 55 N. J. 511, 263 A. 2d 129; *Tooker* v. *Lopez* (1969), 24 N. Y. 2d 569, 249 N. E. 2d 394; *Casey* v. *Manson Constr. & Eng. Co.* (1967), 247 Ore. 274, 428 P. 2d 898; *Cipolla* v. *Shaposka* (Pa. 1970), 267 A. 2d 854; *Woodward* v. *Stewart* (R. I. 1968), 243 A. 2d 917; *Conklin* v. *Horner* (1968), 38 Wis. 2d 468, 157 N. W. 2d 579.

demonstrate the injustice of the automatic application of the law of the place of the injury.

By offering to confess judgment, defendant in effect admitted liability for negligence, thus removing from consideration any conflict concerning the conduct required of motorists by Illinois traffic laws.

As noted by Chief Justice Traynor in *Reich* v. *Purcell* (1967), 67 Cal. 2d 551, 556, 432 P. 2d 727:

"Limitations of damages * * * have little or nothing to do with conduct. They are concerned not with how people should behave, but how survivors should be compensated. The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there."

See, also, *Fabricius* v. *Horgen* (1965), 257 Iowa 268, 132 N. W. 2d 410; *Tramontana* v. *S. A. Empresa De Viacao Aerea Rio Grandense* (C. A. D. C. 1965), 350 F. 2d 468; *Griffith* v. *United Air Lines* (1964), 416 Pa. 1, 203 A. 2d 797; *Ingersoll* v. *Klein* (1969), 106 Ill. App. 2d 330, 245 N. E. 2d 288.

We have no doubt that if an issue were involved concerning the driving conduct of the parties within the state where the accident occurred that state would have a substantial interest in the determination of that issue; therefore, in choosing the law to be applied such an interest would have to be considered.

All governmental interest in this case is Ohio's. Both the interest in fair and adequate compensation for the next of kin of an Ohio resident killed by a wrongdoer and the lawful administration of the decedent's estate are solely Ohio governmental interests. We fail to find any Illinois concern involved or disturbed.

In this case, it may be stated that there is no true conflict of laws problem, or a false conflict, since Illinois has no interest in the litigation. See *Reich* v. *Purcell, supra* (67 Cal. 2d 551); Traynor, Is This Conflict Really Necessary, 37 Tex. L. Rev. 657. However, any theory of choice of law other than *lex loci delicti* calls for the evaluation

of the posture of the law of more than one state. Once the process of examining the law of the place of injury, the law of the forum, and the law of any other state having an interest is implemented, whether or not a conflict is found, the decision-making process is the same. Therefore, the true search in each instance is for substantial state governmental interest; only the results of the search differ. In order to determine the most substantial interest, a weighing of any conflicting governmental interests of states concerned is necessary.

A holding for appellee in this case can only be justified for the sole reason of preserving the rule of *lex loci delicti*,[3] a rule which no party even argues is more likely than not to be just in any multi-state wrongful death situation. We do not believe that a retreat from utilization of that rule can be made only upon showing a court's present ability to pre-establish a new and different rule which would be applicable in all conceivable multi-state tort problems.

The proper law applicable for determining the measure of damages in the case at bar is Ohio law.

Appellee also urges that a failure to apply Illinois law fails to follow the plain dictates of R. C. 2125.01, and would be an unconstitutional extra-territorial extension of Ohio jurisdiction.

The pertinent provisions of R. C. 2125.01 read:

"When death is caused by a wrongful act, neglect, or default in another state, territory, or foreign country, for which a right to maintain an action and recover dam-

---

[3] Since 1965, the following cases reflect adherence to the rule applying the law of the place of the injury. *McGinty* v. *Ballentine Produce* (1966), 241 Ark. 533, 408 S. W. 2d 891; *Landers* v. *Landers* (1966), 153 Conn. 303, 216 A. 2d 183; *Folk* v. *York-Shipley* (Del. 1968), 239 A. 2d 236; *McDaniel* v. *Sinn* (1965), 194 Kan. 625, 400 P. 2d 1018; *Cook* v. *Pryor* (1968), 251 Md. 41, 246 A. 2d 271; *Abendschein* v. *Farrell* (1969), 382 Mich. 510, 170 N. W. 2d 137; *Cobb* v. *Clark* (1965), 265 N. C. 194, 143 S. E. 2d 103; *Oshiek* v. *Oshiek* (1964), 244 S. C. 249, 136 S. E. 2d 303; *Marmon* v. *Mustang Aviation* (Tex. 1968), 430 S. W. 2d 182.

ages is given by a statute of such other state, territory, or foreign country, *such right of action* may be enforced in this state." (Emphasis added.)

That provision was enacted in response to decisions of this court which had held that an Ohio administrator could not maintain, in Ohio, an action for wrongful death under the statutes of another state. See *Woodard* v. *Michigan Southern & Northern Indiana Rd. Co.* (1859), 10 Ohio St. 121; *Hover* v. *Pennsylvania Co.* (1874), 25 Ohio St. 667; *Brooks* v. *Railway Co.* (1895), 53 Ohio St. 655.

A "right of action" is "an adjective or remedial right to invoke the court for redress of the wrong" (*Van Camp* v. *McCulley* [1913], 83 Ohio St. 1, 6), or, more simply, the "right to sue" (*Baltimore & Ohio Rd. Co.* v. *Hollenberger* [1907], 76 Ohio St. 177, 184). See, also, *Fielder* v. *Ohio Edison Co.* (1952), 158 Ohio St. 375, 382; Black's Law Dictionary (4 Ed.), 1488. Neither the intent of the General Assembly nor the clear meaning of the words used would lead us to believe that the Ohio statute requires the complete and automatic application of Illinois law to each and every wrongful death action accruing from a tort which occurred in that state.

The simple meaning of the above-quoted provision of R. C. 2125.01 is that *a right to sue* for an alleged wrongful death occurring in another state *may be enforced* in the courts of Ohio. While the General Assembly did, in effect, incorporate the statute of limitations of the *situs* state,[4] its failure to specifically require any further application of foreign law supports our conclusion that there is no intended requirement that the entire Illlinois statute be utilized. The relationship of Ohio with this litigation is more than significant enough to counter the contention that our result herein affronts the federal Constitution. See *Richards* v. *United States* (1962), 369 U. S. 1.

---

[4] R. C. 2125.01 provides in part:

"Every such action shall be commenced within the time prescribed for the commencement of such actions by the statute of such other state, territory, or foreign country."

The rusty boiler-plate rule of *lex loci delicti* may once have served to solve choice-of-law problems, but its value in our highly motorized transient society in a wrongful death case is so erroded by its low yield of justice that we cannot justify its automatic application.

.   The judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Common Pleas for further proceedings in accordance with this opinion.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and LEACH, JJ., concur.

SCHNEIDER, J., concurs in the syllabus and judgment.

LEACH, J., concurring.   By this concurring opinion I hope to again remind the bench and bar of this state of the long-established rule of this court that the syllabus of an opinion is the only part of the opinion requiring the approval of the members concurring in the judgment, and of the fact that "where the judge writing the opinion discusses matters or gives expression to his views on questions not contained in the syllabus, it is merely the personal opinion of that judge." *State, ex rel. Donahey,* v. *Edmondson* (1913), 89 Ohio St. 93, at page 107.   See, also, *Charles A. Burton, Inc.,* v. *Durkee* (1954), 162 Ohio St. 433.

I agree that neither reason nor precedent compels us to blindly apply to the facts in this case the law of Illinois, in force at the time of the motor vehicle collision herein, limiting recovery of *damages* to $30,000 in all wrongful death actions.   I would further agree that the rule of *lex loci delicti* does not require its *automatic* application in all cases or as to all aspects of a case.   I do not, however, relegate this rule to the junk-heap of "rusty boiler plate," nor do I agree that the general application of this rule has resulted in a "low yield of justice."

By our ruling herein, I believe that we are defining an *exception* to the rule—but I trust that we are not com-

pletely discarding a rule of law, long basic to most American jurisprudence, and embarking upon a relatively uncharted course with no real and definitive pole-star as a guide.

The impact of such a course on delay and congestion in the courts is referred to by Professor Karlen[5] in his recent English lectures. These lectures are contained in Judicial Administration—The American Experience, where at page 66, he states:

"* * * The old choice of law rule in such a case was that the substantive law of the place where the tort occurred would govern. The new concept is that the court of the forum will follow the law of the state having the most 'significant contacts' with the litigation. The difficulties posed by such concepts in a nation where each state retains a high degree of sovereignty and where people travel from state to state very freely are formidable. They add new elements of instability to laws which are already uncertain, and make confusion worse confounded."

Being in essential agreement with Professor Karlen's statement, I do not want my concurrence herein to be interpreted as approving a complete discarding of *lex loci delicti.*

SCHNEIDER, HERBERT and STERN, JJ., concur in the foregoing concurring opinion.

---

[5] Director of the Institute of Judicial Administration Inc., New York, and Professor of Law, New York University.