OPINION.
This is an appeal from a wrongful-death action arising out of a work-related accident that killed Michael Standring. At the time of his death, Standring, an Ohio resident, was employed by Gerbus Brothers Construction Company, an Ohio corporation. Standring was killed near Maysville, Kentucky, while working on a Gerbus project for Eastern Kentucky Power, when a piece of heavy equipment he was operating sank into a fly-ash pond, resulting in his death by asphyxiation. The plaintiff, Standring's widow and the administratrix of his estate, brought an action in the trial court for an intentional tort, the exception under Ohio law to the general rule limiting recovery for injuries in the workplace to workers' compensation benefits. In her sole assignment of error, Mrs. Standring argues that the trial court erred by granting Gerbus summary judgment on her claim, ruling that Kentucky, not Ohio, law controlled. For the reasons that follow, we agree and thus reverse.
Initially we note that this appeal does not concern the merits of Mrs. Standring's intentional-tort claim. The trial court never reached that issue because of its view that Kentucky law controlled. Instead, we are concerned solely with the conflict-of-law issue. Pursuant to Civ.R. 44.1(A)(3), the decision of the trial court on this issue is to be treated as a question of law, and is therefore subject to de novo review. SeeBrunner v. Quantum Chemical Corp. (Mar. 17, 1993), Hamilton App. No. C-920037, unreported.
Both parties agree that the applicable conflict-of-law analysis is that in Morgan v. Biro Manufacturing Co., Inc., (1984),15 Ohio St.3d 339, 474 N.E.2d 286. That analysis is taken from 1 Restatement of the Law 2d, Conflict of Laws (1971), Sections 6, 145, and 146. Section 6 states that the forum court should first follow a statutory directive of its own state on the proper law to be applied; however, in the absence of such a directive, the forum state is directed to consider the following relevant factors in determining which state's law to apply:
(a) the needs of the interstate and international systems;
(b) the relevant policies of the forum;
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
(d) the protection of justified expectations; and
(e) the basic policies underlying the particular law.
 Section 145 states that the applicable law with respect to an issue in tort is that of the state which has the most significant relationship. Section 146 creates a presumption in favor of the law of the place of injury "unless another jurisdiction has a more significant relationship to the lawsuit." The section then sets forth a list of factors that the trial court should consider to determine the state with the most significant relationship. These factors include the following:
(1) the place of injury;
(2) the place where the conduct causing the injury occurred;
 (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties;
 (4) the place where the relationship between the parties, if any, is located; and
(5) any factors under Section 6 deemed relevant.
THE TRIAL COURT'S DECISION
 The trial court, in its decision granting summary judgment, ruled that, when applying the factors enumerated in Section 146, "both Ohio and Kentucky share a substantial interest in this matter." The trial court added, "Although the place of injury and place of conduct causing the death of Mr. Standring weigh undisputedly in favor of application of Kentucky law, the domicile, residence and place of incorporation all militate equally toward application of Ohio law."
The trial court ultimately based its decision on Section 6 of the Restatement, concluding that Ohio did, in fact, have a controlling statutory directive on which state's law to apply: R.C. 2125.01. That statute reads in pertinent part,
 If the death of a person is caused by a wrongful act, neglect or default in another state or foreign country and a right to maintain a civil action for wrongful death and recover damages is given by a statute of the other state or foreign country, the right to maintain the civil action may be enforced in this state.
 The trial court interpreted this language as requiring application of Kentucky law to Standring's death. Kentucky law does not provide for an intentional-tort claim against an employer. Under Ohio law, an intentional tort is an act committed with the intent to injure another, or with the belief that such injury is substantially certain to occur. Jones v. VIP Development Co. (1984), 15 Ohio St.3d 90, 472 N.E.2d 1046, syllabus. There is no requirement of deliberateness. Johnson v. BP Chemicals, Inc. (1999), 85 Ohio St.3d 298, 306, 707 N.E.2d 1107, 1113. The closest analog to such an action under Kentucky law is found in Ky. Rev. Stat. Ann. 342.610(4) (1982), which allows an action against an employer outside of the workers compensation system "[i]f injury or death results to any employee through the deliberate intention of his employer." In other words, unlike an intentional tort under Ohio law, the employer must have acted to deliberately injure the employee. As Gerbus points out, there has been no allegation made, and no evidence presented, that the company deliberately intended to injure or kill Standring.
In sum, the trial court interpreted R.C. 2125.01 as requiring the application of Kentucky law and therefore denied to the Standring estate the right to bring an intentional-tort action under Ohio.
 STATUTORY DIRECTIVE
Standring's estate argues that the trial court misconstrued the import of R.C. 2125.01, treating it incorrectly as a limiting, rather than an empowering, statute. We agree.
In Fox v. Morrison Motor Freight (1971), 25 Ohio St.2d 193,267 N.E.2d 405, the Ohio Supreme Court expressly rejected the idea that R.C. 2125.01 was intended to impose the law of a foreign state upon Ohio courts when the relationship of Ohio with the litigation was superior to that of the foreign state. The court inFox explained that the limited purpose of the statute was to make clear that the Ohio administrator could maintain, in Ohio, an action based upon another state's wrongful-death statute: "The simple meaning of the above-quoted provision of R.C. 2125.01 is that a right to sue for an alleged wrongful death occurring in another state may be enforced in the courts of Ohio." (Emphasis in original.) However, "[n]either the intent of the General Assembly nor the clear meaning of the words used would lead us to believe that [R.C. 2125.01] requires the complete and automatic application of [the foreign state's] law to each and every wrongful death action accruing from a tort which occurred in that state." Id. at 200, 267 N.E.2d at 409.
Gerbus seeks to distinguish Fox from the instant case because the conflict-of-law issue confronting the court in Fox was whether Ohio law or Illinois law should have been applied in determining the amount of damages recoverable. In Gerbus's view, had the case concerned issues of liability, the result would have been different. While this argument may be true with respect to the court's ultimate conclusion as to which state had the more significant interest for conflict-of-law purposes, it could not logically have affected the court's interpretation of R.C.2125.01. Either R.C. 2125.01 was intended as a directive on conflict-of-law issues, or it was not. According to the court's clear holding in Fox, it was not.
To support its argument, Gerbus cites two unpublished decisions by other courts of appeals that have come to the opposite conclusion: Wehrle v. M-J Painting Co., Inc. (May 16, 1988), Mahoning App., No. 97 C.A. 54, unreported, and White v. Bekins VanLines Co., Inc. (Dec. 31, 1998), Montgomery App. No. C.A. 17159, unreported. In Wehrle, although the court had earlier cited Fox,
the court summarily interpreted R.C. 2125.01 to be a conflict-of-law rule requiring that the law of the foreign state be applied by Ohio courts. White cited Wehrle to reach the same result. In our view, both these decisions reach a holding on the meaning of R.C. 2521.01 that is directly contrary to the holding of Fox.
We conclude that R.C. 2521.01 is not a statutory directive controlling the conflict-of-law issue here, and that the trial court erred in treating it as such. We turn, therefore, to considering the factors enumerated in Section 146 of the Restatement to determine whether Ohio or Kentucky has the more significant interest in this litigation.
 RESTATEMENT FACTORS
As noted, Section 146 creates a presumption in favor of the law of the place of injury "unless another jurisdiction has a more significant relationship with the lawsuit." To determine whether this is the case, the Restatement lists the following factors:
(a) the place where the conduct causing the injury occurred;
 (b) the domicile, residence, nationality, place of incorporation, and place of business of the parties;
 (c) the place where the relationship between the parties, if any, is located; and
(d) any factors under Section 6 deemed relevant.
 The parties disagree as to the first of these factors — the situs of the conduct causing the injury. Standring's estate contends that "the safety personnel in Ohio planned the scenario which led to Standring's death." Gerbus, on the other hand, asserts that "there is absolutely no evidence in the record to suggest anything of the sort." On review of the record, it is difficult, if not impossible, to discern upon what conduct, exactly, Standring's estate is basing its claim of an intentional tort, and therefore we cannot say that this factor militates in favor of either party.
As for the second grouping of factors — the domicile, place of residence, place of incorporation, and place of business of the parties — it is clear, as the trial court ruled, that all these militate strongly in favor of Ohio law. Standring and his family lived in Fayetteville, Ohio, at the time of his death. Gerbus is an Ohio corporation with its principal place of business in Loveland, Ohio. There is evidence of record that the employment contract for the work at the power plant was formed over a telephone conversation that took place in Ohio. Although the project he was working on was for Eastern Kentucky Power, the parties do not dispute that Standring was a Gerbus employee at the time of his death.
The next factor addresses the place "where the relationship between the parties, if any, is located." The employment relationship between Standring and Gerbus, an Ohio resident and an Ohio corporation, was clearly located in Ohio although the job site was in Kentucky.
The final factor or factors to be considered are any of those relevant from Section 6 of the Restatement. Section 6 requires a weighing of the competing interests and policies of the foreign and forum states.
Initially, we reject the argument, advanced by Gerbus, that Ohio has no interest in this litigation because Ohio workers' compensation is not available to an employee injured while performing work at a specific job site in another state when the injury is covered by that state's workers' compensation program. This argument ignores the rationale behind an intentional-tort claim, which is that the injury is not one "arising out employment" under the Ohio Workers' Compensation Act. "Since an employer's intentional conduct does not arise out of employment, R.C. 4123.74 does not bestow upon employers immunity from civil liability for their intentional torts and employees may resort to a civil suit for damages." Blankenship v. Cincinnati MilacronChemicals, Inc. (1982), 69 Ohio St.2d 608, 613, 433 N.E.2d 572,576. See, also, Brady v. Safety-Kleen Corp. (1991), 61 Ohio St.3d 624,576 N.E.2d 722; Johnson v. BP Chemical, Inc. (1998), 85 Ohio St.3d 298,707 N.E.2d 1107. As noted by Justice Douglas in a dissent later adopted by the majority of the court in Brady,
 Injuries resulting from an employer's intentional torts, even though committed at the workplace, are utterly outside the scope of the purposes intended to be achieved by Section 35 and by the Act. Such injuries are totally unrelated to the fact of employment. When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employee and employee, but intentional tortfeasor and victim. If the victim brings an intentional tort suit against the tortfeasor, it is a tort action like any other. The employer has forfeited his status as such and all the attendant protections fall away. The Industrial Commission can have no jurisdiction over such an action. The lawsuit has no bearing upon any question relating to employment. * * *
Taylor v. Academy Iron Metal Co. (1988), 36 Ohio St.3d 149, 162,522 N.E.2d 464, 476 (Douglas, J., dissenting), quoted with approval in Brady, supra, at 634, 576 N.E.2d at 729.
Since intentional-tort injuries are not covered under the Act, the territorial reach of the Ohio workers' compensation system is not germane. For the same reason, we reject the ancillary argument made by Gerbus that it could have reasonably expected that its participation in the Kentucky workers' compensation system would make it immune from an intentional-tort claim under Ohio law. This argument would be persuasive were it not for the special nature of an intentional tort. As the Ohio Supreme has made clear, an employer cannot legitimately expect to be immunized by workers' compensation for an intentional tort, because such a tort is not a natural incident of the employment relationship, and, in effect, constitutes a breach of that relationship. As the court has stated, "No reasonable individual would equate intentional and unintentional conduct in terms of the degree of risk which faces an employee nor would such individual contemplate the risk of an intentional tort as a natural risk of employment."Blankenship, supra, at 613, 433 N.E.2d at 576. Indeed, the court has deemed it "a travesty on the use of the English language to allow someone who intentionally inflicts an injury on another to call the injury a work incident." Id. at fn. 8.
We are not swayed, therefore, that Gerbus should be sheltered from suit for an intentional tort under Ohio law because of geographical limitations inherent in the Ohio Workers' Compensation Act, or because Gerbus, an Ohio corporation, could justifiably expect immunity for an intentional tort against an Ohio citizen under the workers' compensation laws of another state. Rather, as required by Section 6, we must examine the policy underlying Ohio's recognition of an intentional-tort claim against employers, and then measure that policy against any competing interest or policy of Kentucky.
The policy of the state of Ohio is to vigorously defend the common-law right of employees to sue for intentional torts committed against them by their employers. Thus, the Ohio Supreme Court has twice struck down legislative efforts either to eliminate that right or to govern when and under what circumstances an intentional-tort claim may be brought. See Brady
and Johnson, supra. The court has stated that such legislative efforts are "totally repugnant" to Section 34, Article II of the Ohio Constitution,[1] and exceed legislative authority under Section 35 of the same Article.[2] Along with the constitutional underpinnings of its decisions, the court has expressed the view repeatedly that the purpose of the workers' compensation system is to promote a safe and injury-free work environment, and that "[a]ffording an employer immunity for his intentional behavior certainly would not promote such an environment, for an employer could commit intentional acts with impunity with the knowledge that, at the very most, his workers' compensation premiums may rise sharply." Blankenship, supra, at 615, 433 N.E.2d at 577.
Kentucky, on the other hand, clearly has an interest in ensuring that employers who are in full compliance with all the requirements of its workers' compensation act enjoy the immunities it provides. As the Ohio Supreme Court has stated, a workers' compensation system is in the nature of a pact, whereby "employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability." Id. at 614, 433 N.E.2d at 577. The court has also noted, though, that such protection has always been for negligent acts, not intentional torts. Id. It is difficult to articulate a persuasive basis for Kentucky having an interest in providing immunity to employers who commit intentional torts upon its employees, although, concededly, under Ky. Rev. Stat. Ann.342.610(4) (1982) it apparently does so unless the employer acted deliberately to injure its employee.[3]
Weighing all these factors, we conclude that Ohio has the greatest interest in this litigation. This case involves an Ohio employer and an Ohio employee involved in an employment relationship arising and existing within the state of Ohio. The policy of this state is to vigorously protect the common-law right of employees to sue for an intentional tort. We hold, therefore, that the proper law to be applied is that of Ohio. Accordingly, the judgment of the trial court is reversed and this cause remanded for further proceedings in accordance with this Opinion.
Judgment reversed and cause remanded.
HILDEBRANDT, P.J., and SUNDERMANN, J., concur.
[1] Section 34, Article II of the Ohio Constitution states,
 Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the constitution shall impair or limit this power.
[2] Section 35, Article II of the Ohio Constitution provides the following:
 For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.
[3] In Johnson, cited in the text, the Ohio Supreme Court rejected the General Assembly's effort to require an employee to show that an employer's conduct was both deliberate and intentional to establish an intentional tort. The court reasoned that the requirement of deliberateness would require an employee, or his or her survivors, to show "at a minimum, that the actions of the employer amount to criminal assault." Johnson, supra, at 306, 707 N.E.2d at 1113.