[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF LAW MOTION FOR SUMMARY JUDGMENT
The defendants have filed a motion for summary judgment requesting that the court determine that New York law applies to this action, including the New York "no fault statute" that the defendants have raised in their special defenses. If the court agrees with the defendants and does apply New York law, the defendants further argue that the plaintiffs claim is barred, as the plaintiff has not met the requirements of the New York "no fault statute" in that she did not sustain the "basic economic loss" or "serious injury" within the meaning of the New York law.
The plaintiff, in opposing the motion for summary judgment, argues that Connecticut law should be applied by the court, and regardless of whether Connecticut law or New York law applies, the plaintiffs action is based upon common law negligence. Thus, the New York "no fault" law does not apply to this incident.
The relevant facts are undisputed. The plaintiff in her Revised Complaint dated March 7, 2002 alleges that she sustained personal injuries as a result of an accident which occurred on September 27, 1999, at the National Airline Terminal at John F. Kennedy Airport in Jamaica, New York. The plaintiff was a passenger on a bus owned by the defendant Connecticut Limousine, LLC, which was being operated by the defendant Mele, an employee of Connecticut Limousine, LLC. The plaintiff, a Connecticut resident, purchased a round trip ticket in Connecticut and boarded the bus in Connecticut.
When the defendants' bus arrived at the airport terminal, the driver, Mele, exited the bus and placed a plastic stool on the sidewalk adjacent to the exit doors of the bus for the purpose of assisting passengers as they exited the bus. The plaintiff alleges that as she stepped down from the bus onto the plastic stool "slid off the stool due to its slippery surface" causing her to fall to the ground and to sustain personal injuries. CT Page 13478
The defendant Connecticut Limousine has admitted that it is a limited liability company in Connecticut and that its principal place of business is located in Connecticut. It advertises for transport services in Connecticut for round trip tickets for its transport services to and from New York airports. The Connecticut Department of Transportation maintains jurisdiction and regulation over the operation of and the equipment used in livery vehicles based in Connecticut.
Choice of law issues can be determined in a motion for summary judgment. Anely v. Allstate Insurance Company, Superior Court, judicial district of Stamford/Norwalk at Stamford, No. CV 980166413S (Jan. 9, 2002) (D'Andrea, JTR), 2002 Ct. Sup. 344; See, e.g. Howe v. StuartAmusement Corp., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 343407 (December 10, 1991, (Hennessey,J.), 5 Conn.L.Rptr. 350, 351 (1992) and Brunow v. Burnett, et al., Superior Court, judicial district of Litchfield, Docket No. CV 930062060 (April 6, 1994) (Walsh, J.) 1994 Ct. Sup. 3680. "A Motion for Summary Judgment is designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilson v. New Haven,213 Conn. 277, 279, 567 A.2d 829 (1989). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party." Hertz Corp. v. Federal Ins.,Co., 245 Conn. 374, 381, 713 A.2d 820 (1998). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any issues exist. Nolanv. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Hertz Corp. v. Federal Ins. Corp., supra, 245 Conn. 381. "The opposing party must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Id. "A material fact is a fact which will make a difference in the result of a case." Suarezv. Dickmont Plastics Corp., 229 Conn. 99, 639 A.2d 507 (1994). The test used by the court is to determine if the moving party would be entitled to a directed verdict if the same set of facts were presented at trial.Connell v. Colwell, 214 Conn. 242, 246-47, 571 A.2d 116 (1990). A directed verdict is properly rendered if a trier of fact cannot reasonably and legally find in any fashion other than that directed.Santopietro v. New Haven, 239 Conn. 207, 225, 682 A.2d 106 (1996).
The sole issue is whether, under the circumstances of this case, an injured person may pursue a cause of action under Connecticut law to recover for allegedly tortious conduct that occurred in a jurisdiction where such a cause of action would not be permitted because the plaintiff has not met the requirements for an action under the New York no fault CT Page 13479 law.
With a choice of law issue involving a cause of action that springs from an unintentional tort, there is no longer a presumption that the law of the state where the accident occurred will be the choice of law. Turning to an examination of the relevant provisions of the Restatement Second of Conflict of Laws in the context of the dispute presently before the court, it is noted that Section 145 of the Restatement Second provides in subsection (1) that "[t]he rights and liabilities of the parties with respect to an issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in 6." Section 6 of the Restatement, in turn, provides: " (1) A court, subject to Constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protections of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." O'Connoryv. O'Connor, 201 Conn. 632, 650-51, 519 A.2d 13 (1986).
"For assistance in our evaluation of the policy choices set out in 145 (1) and 6 (2), we turn next to 145 (2) of the Restatement, which establishes black-letter rules of priority to facilitate the application of the principles of 6 to tort cases. See H. Kay, "Theory into Practice: Choice of Law in the Courts," 34 Mercer L. Rev. 521, 555 (1983). Section 145 (2) provides: "Contacts to be taken into account in applying the principles of 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue." Id. at 652.
In the circumstances of the present case, because the plaintiff was injured in New York and the tortious conduct occurred there, 145 (2) (a) and (b) weigh in favor of applying New York law. Because both parties are Connecticut domiciliaries and their relationship is centered here, 145 (2) (c) and (d) indicate that Connecticut law should be applied. "To resolve this potential standoff, we need to recall that it is the CT Page 13480 significance, and not the number, of 145 (2) contacts that determines the out come of the choice of law inquiry under the Restatement approach."Id. at 652-653.
The court must analyze the respective policies and interests of New York, the place of injury, and Connecticut, the forum state. In the process of that analysis, we must evaluate the relevance of each jurisdiction's 145 (2) contacts to this particular controversy.
New York, as the place of injury. has an obvious interest in applying its standards of conduct to govern the liability, both civil and criminal, of persons who use its highways. Id.; See Hauch v. Connor,295 Md. 120, 124, 453 A.2d 1207 (1983); Fox v. Morrison Motor Freight,Inc., 25 Ohio St.2d 193, 198, 267 N.E.2d 405 (1971); Tower v. Schwabe,284 Or. 105, 107, 585 P.2d 662 (1978).
In the present case, however, the relevant New York law expresses no interest in regulating the conduct of the defendant, but rather limits the liability exposure to which his conduct subjects him. O'Connor v.O'Connor, supra. "The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there."Id., quoting Reich v. Purcell, 67 Cal.2d 551, 556, 432 P.2d 727,63 Cal.Rptr. 31 (1967).
The policies behind New York no-fault rule would not be substantially furthered by application of New York law in the circumstances of the present case. In this case, neither the plaintiff nor the tortfeasor is a resident. There is no evidence on the record that the defendants' bus was insured or registered in New York. Rather, the record indicates that the parties were merely "passing through" New York, and that the location of the accident was fortuitous. Clearly the goal of reducing insurance rates in New York is not furthered by application of the New York no-fault act to an accident involving only nonresidents of New York. New York's interest in alleviating the administrative and judicial costs of motor vehicle accident litigation is in no way implicated when, as in this case, a nonresident brings suit against another nonresident in a foreign jurisdiction.
In the Defendants' Motion for Summary Judgment, the Defendants argue that New York has the most significant contacts in this case. In support of this argument, the Defendants made the following assertions: (1) The accident occurred in New York; (2) the actions causing the injury occurred in New York; (3) the plaintiff hired the defendant to take her to New York; (4) although Connecticut Limousine is a Connecticut Limited Liability Company, its business is to transport customers to New York and CT Page 13481 to other states; (5) Connecticut Limousine conducts substantial business activities in New York; (6) a large percentage of the revenues for Connecticut Limousine are derived from transporting passengers to and from New York airports, and (7) Connecticut Limousine must comply with the New York licensing, regulatory, and taxation regulations and laws.
In order to justify the application of Connecticut law to the issue at stake, however, we must consider whether Connecticut's contacts with the litigation give it a legitimate interest in applying its law to the controversy. The court is persuaded that Connecticut does have the requisite significant contacts.
As mentioned above, it was fortuitous that the injury and the actions causing the injury occurred in New York. Both parties are Connecticut residents and the relationship between the parties began in Connecticut. In addition, the Defendants' business relationship with the Plaintiff was solicited and consummated in Connecticut. Connecticut Limousine is a Limited Liability Company headquartered in Connecticut. Although Connecticut Limousine conducts substantial business activities in New York, a large percentage of those business activities are solicited, and begin and end in Connecticut. In the same way, a significant percentage of the revenues which are derived from transporting passengers to New York, are solicited and paid for in Connecticut. Further, while Connecticut Limousine is certainly required to comply with New York licensing, regulatory and taxation regulations and laws, they must also do so in Connecticut. The State of Connecticut has an interest in protecting the rights of its citizens and businesses. Connecticut Limousine advertises in Connecticut with the intent of soliciting relationships with Connecticut customers like the Plaintiff. The court can conclude from the above facts that Connecticut has the most significant relationship to the parties, and that the relationship itself is centered in Connecticut.
Even if the court was to determine that New York has the most significant relationship to the occurrence and the parties in this case, there is also a significant issue surrounding the question of whether this injury involved a motor vehicle accident. If there was no motor vehicle accident, New York no fault laws would not apply. The purpose of insurance law is to "allocate equitably the losses suffered by injured parties through the use and operation of automobiles, including losses suffered by pedestrians, but should not be so twisted and extended as to confer on the injured party a benefit not intended by the legislature" N.Y. Insurance Law § 5104, (note 2) (McKinney, 1984). No-fault insurance law in New York was meant for "automobile accident victims."Id. at § 5104 (note 6). CT Page 13482
The foundation for the Defendants' argument is a 1994 case, Williamsv. State Farm Mutual Automobile Insurance Company, 229 Conn. 359 (1994) In Williams, a Connecticut resident, while driving in New York State, had a collision with another motor vehicle. The second vehicle was registered in New York. The court held that New York had the most significant relationship to the case. The Williams case can be differentiated by the fact that there were two vehicles involved in a motor vehicle accident. In contrast, in this case there is no motor vehicle accident. The main cause of the Plaintiff's injury was not a motor vehicle, but rather a foot stool. The Defendant's argument that, like the Williams case, "this litigation involves an accident which occurred in New York," is faulty because one case involved motor vehicle accident and the other involved a slip and fall. There was no motor vehicle accident in this case.
If the court were to determine that New York has the most significant relationship to the occurrence and the parties in this case, and if a relevant motor vehicle accident has occurred so as to bring the case under the umbrella of New York's no-fault statute, there are still genuine issues of material fact surrounding the question of whether the plaintiff is a covered person under New York no-fault law.
In general, an occupant is a covered person for the purposes of the New York no-fault law. The New York statute, section 5104 (b) states in relevant part that a cause of action for personal injury arises "in an action by or on behalf of a covered person against another covered person for personal injury arising out of negligence in the use or operation of a motor vehicle in this state. . . ." N.Y. Insurance Law § 5104 (b) (McKinney, 1984). In addition, Section 5102 (j) defines a covered person as "any pedestrian injured through the use or operation of, or any owner, operator or occupant of, a motor vehicle. . . ." Id. at § 5102 (j). The Plaintiff was an occupant until she began to exit the vehicle. An occupant of a motor vehicle is covered under New York no-fault law. However, the law only covers an occupant in the literal meaning of the word. "[T]he word `occupant' and its associated term `occupying' are to be given their lexicographical [dictionary] meaning."Id. at § 5102, note 173. The Plaintiff was not an occupant once she began to leave the vehicle. The "definition of an `occupant' who is a covered person . . . arising out of negligence in use or operation of a motor vehicle does not extend to vehicle oriented conduct outside the vehicles such as entering or leaving it." Id.
The foregoing analysis leads us to conclude that New York's status as the place of injury is not a significant contact for purposes of our choice of law injury in this case. Accordingly, since New York has no CT Page 13483 other contacts with this litigation, we hold that New York has no interest in applying its no-fault act to bar the plaintiffs action.
In summary, it was fortuitous that the injury and the actions causing the injury occurred in New York. The same actions that caused the injury, and the injury itself, could have occurred in Connecticut when the plaintiff disembarked after the ride home. In O'Connor v. O'Connor, supra, the court applied Connecticut law where it found that "the parties were merely `passing through' the province of Quebec, and that the location of the accident was fortuitous." In this case, the Plaintiff was merely passing through New York. Passengers of Connecticut Limousine often purchase round trip tickets in Connecticut. Connecticut Limousine runs in a continuous loop between Connecticut and New York. Customers start in Connecticut and are transported to New York where they disembark. Upon their return trip, often using a round trip ticket, they are picked up in New York and transported to Connecticut.
The court is persuaded, therefore, that Connecticut is the jurisdiction whose laws bear the most significant relationship to the controversy at hand. Accordingly, the motion for summary judgment is denied.
The Court
by Arnold, J. CT Page 13484