### DeWALT v. KINARD.

1. Action was brought for recovery of real property and for injunction, and the answer denied the plaintiff's title. Motion was then made by plaintiff, on the pleadings alone, for the payment of rent into court, the leasing of the land pending litigation, and for a reference to the master to take the testimony, and the motion was granted. *Held,* that the issue of title was a legal demand, triable by jury, and defendant's failure to demand such a trial was not a waiver of this right.

2. A claim of title in the complaint, together with an allegation of defendant's insolvency and of danger of loss of rents—all of which are denied in the answer—do not make a case warranting the appointment of a receiver. MR. JUSTICE McGOWAN *dissenting.*

3. A conclusion of fact, drawn by the Circuit judge from the allegations of the complaint and answer, reversed, because without any evidence to support it, or, at least, opposed to its manifest weight.

4. It is not necessary that a plaintiff should give bond to entitle him to the appointment of a receiver for the collection of rents pending litigation; and the master of the court being appointed such receiver, no special bond need be required of him.

5. On a motion preliminary to the hearing on the merits, it is error to grant relief beyond the terms of the notice.

6. Upon the equitable issues raised in the case, testimony could be taken by the master, even without the consent of the other side; but the legal issues cannot be referred without consent of all parties.

7. Any errors apparent in the Circuit order may be made the grounds of appeal. This case distinguished from *Kaminer* v. *Hope,* 18 *S. C.* 561.

---

Before KERSHAW, J., Newberry, November, 1880.

Action by George DeWalt, commenced in September, 1880. The opinion states the case.

*Messrs. Suber & Caldwell,* for appellant.

*Messrs. Moorman & Simkins, J. Y. Culbreath,* contra.

April 21st, 1883. The opinion of the court was delivered by

Mr. Justice McIver. The plaintiff in his complaint alleges that the defendant Andrew Kinard executed a note to him for $650, which note was secured by a mortgage of a tract of land, described in the complaint, bearing date March 8th, 1876, containing a power of sale; that default being made in the payment of the note, the defendant Andrew Kinard went out of possession of the land, and that thereby the title became vested in the plaintiff; that under the said power of sale the plaintiff, on January 5th, 1880, exposed the land for sale at public outcry, with the knowledge and consent of Andrew Kinard, and the same was bid off by O. B. Mayer, Jr.; that a deed was accordingly made to said Mayer, who, on the same day, executed a deed for said land to the plaintiff; that the defendant George A. Kinard, and the defendants Cannon and Ruff, who claim to be his tenants, are in unlawful possession of said land, and have refused upon demand to surrender possession to the plaintiff; that the defendant Cannon has agreed to pay defendant George A. Kinard three bales of cotton as rent for the land for the year 1880; that both George A. Kinard and Cannon are insolvent, and that there is danger that the rents will be lost unless some provision is made to prevent such a result. Wherefore, the plaintiff demands judgment: 1st. For the recovery of possession of said land. 2d. Declaring the rents to be the property of plaintiff, and restraining defendant Cannon from paying same to defendant George A. Kinard. 3d. For costs and disbursements. 4th. For other and further relief.

Before any answer was filed, an order was obtained by the plaintiff restraining and enjoining defendant Cannon from paying the rent to George A. Kinard, and restraining said George A. Kinard from receiving or in any wise interfering with the rents until the further order of the court.

After this order was granted, the defendant George A. Kinard filed his answer, in which he admits the execution of the note and mortgage, referred to in the complaint, by Andrew Kinard, but alleges that the real intention of Andrew Kinard was to mortgage only his interest in the land, which was one undivided half; that at the time the mortgage was executed, Andrew Kinard held the legal title to said land; that default was made in the payment of said note, but he denies that subsequent to such default the said Andrew Kinard went out of possession of said land, and, on the contrary, avers that he remained in possession by himself or by his tenants; that the land was offered for sale by plaintiff, under the power contained in the mortgage, and bid off by O. B. Mayer, Jr.; that Andrew Kinard had consented to said sale; that plaintiff executed a deed for the land to said Mayer, but he denies that Mayer was a *bona fide* purchaser of said land, and, on the contrary, avers that he bid it off at the instance and for the benefit of plaintiff; that said Mayer did on the same day execute a deed to plaintiff for said land, but he denies that the title passed thereby; that Cannon and Ruff are his tenants in possession of said land; that he refused to surrender possession, upon the demand of plaintiff, of more than one-half of said land; that Cannon has agreed to pay him three bales of cotton, as rent for the year 1880, and that he denies that he is insolvent. As an affirmative defense, he alleges that he was entitled to a one-half interest in said land, under an instrument in writing executed by Andrew Kinard on December 28th, 1865, long before the execution of the mortgage, a copy of which instrument was filed as an exhibit to the answer, and set out in the "Case"; that plaintiff was aware that defendant George A. Kinard had this interest before he took the mortgage from Andrew Kinard; that to carry out the purpose of this instrument, the said Andred Kinard, on December 18th, 1877, executed a deed to defendant George A. Kinard, for one undivided half of said land; that after plaintiff had obtained his mortgage from Andrew Kinard, he undertook, as the attorney of defendant George A. Kinard, to procure from Andrew Kinard payment for the interest of the said George A. Kinard in the land, and in violation of his instructions, and

imposing upon the said George A. Kinard while under the influ-
ence of liquor, he took from Andrew Kinard a mortgage jun-
ior to his own, well knowing at the time that the same would be
worthless, as the said Andrew Kinard was hopelessly insolvent;
and that upon discovering these facts, defendant George A.
Kinard procured from said Andrew Kinard the deed of Decem-
ber 18th, 1877, for one undivided half of the land; that plaint-
iff, by the betrayal of the confidence of defendant George A.
Kinard, has seriously damaged said defendant. Wherefore, he
demands judgment: 1st. For a partition of said land; 2d. That
he is entitled to the rent, the payment of which has been
enjoined; 3d. For damages; 4th. For costs and disbursements.

To this answer the plaintiff replied, " reiterating many of the
allegations of his complaint, and denying all the charges of the
answer." The defendant Andrew Kinard did not answer, and
the answer of defendants Cannon and Ruff state nothing material
to this appeal.

The case was docketed by the plaintiff on calendar No. 2, and,
before it came on for trial, he served notice on the defendants
that he would move for an order, 1st. Requiring the rent for
the year 1880 to be paid into court to await its order; 2d.
Requiring the land to be leased by the master for the year 1881
to the highest bidder, and this rent, when due, to be paid into
court, subject to its further orders; 3d. That it be referred to
the master to take the testimony in the case and report the same
to the court. This motion was heard by the Circuit judge upon
the pleadings alone, no affidavits or oral evidence having been
submitted, and he held that the admissions of the answer were
" sufficient to establish plaintiff's title *prima facie* and only
qualify their effect by allegations of fraud without proof," and
that the allegation of the insolvency of George A. Kinard,
though denied by him, is shown to be *prima facie* true by the
terms of the paper set up as an exhibit to the answer of George
A. Kinard, and that, therefore, irreparable injury would ensue
unless some order is made to preserve the rents during the pen-
dency of the suit. Accordingly, he ordered: 1st. That the
rent, from January 1st, 1880, be paid to the master; 2d. That

T

the master let the premises from year to year, until the final determination of this action or the further order of the court; 3d. That all obligations held by the defendant, George A. Kinard, or his agents, for the rent of said premises for the year 1880, be delivered up to the master; 4th. That the master hold all money and securities which may come into his hands under this order, subject to the further order of the court; 5th. That it be referred to the master to take testimony upon the issues of fact made by the pleadings herein, and report the same to the court.

From this order defendant George A. Kinard appeals upon the following grounds, to wit: " 1st. Because there was not before his Honor evidence sufficient to show that the said George A. Kinard is not entitled to retain the use and control of the lands involved in this action; 2d. Because there was not before his Honor any affidavits or oral testimony to show the necessity of the intervention of the court pending the action to secure the rights of the plaintiff; 3d. Because the issues in the case, it being an action for the recovery of specific real property, are properly triable before a jury, which trial has not been waived, and, therefore, the testimony could not be compelled to be taken before a referee; 4th. Because this is not a case in which the court is authorized to appoint a receiver of any character; 5th. Because his Honor's order does not require of George G. DeWalt any bond or other indemnification of the appellant for expenses or losses that may befall him in consequence of the order; 6th. Because his Honor, in ordering the land to be rented out by the master for the year 1882 and thereafter, ordered what the plaintiff never applied for or gave notice of."

For a proper understanding of the questions raised by this appeal, it will be necessary to determine the nature and objects of the action and the nature of the defenses pleaded thereto. It was undoubtedly an action of a two-fold character, legal and equitable, and the defenses were of the same character. The main purpose was to recover possession of real property upon the allegation that plaintiff had title thereto, and unless this allegation was admitted an issue was presented which the defendant had the right to have tried by a jury, unless he waived that right, and there is no evidence of any such waiver. There was

no necessity for the defendant to make a formal demand for that mode of trial, for, if the issue was triable in that way, he had the right to assume that the court would, without such demand, accord to him a right expressly guaranteed to him by statute. *Lynch's Code,* § 276. But even if a formal demand was neces-·sary, inasmuch as the case had never been called for trial, the time for making such demand had not arrived. So that we see no force in the argument urged by respondent that the appellant, by failing to demand a trial by jury, had waived his right to such a mode of trial.

The Circuit judge seems to have assumed that the defendant admitted the plaintiff's title, but we do not so understand the pleadings, and it must be remembered that the motion was heard upon the pleadings alone, no evidence whatever having been submitted. Hence no facts should have been assumed except such as were alleged in the complaint and admitted in the answer. Now the plaintiff alleged that he had title to the premises in question and went on to state particularly how he derived his title; but the defendant in his answer, while admitting certain facts set out in the complaint, distinctly denied that plaintiff had title, and thus an issue was presented properly triable by a jury. The plaintiff seems to have rested his claim of title upon two grounds: First. Upon the allegation that his mortgagor having gone out of possession of the mortgaged premises, the title thereby vested in him as mortgagee under the proviso to the second section of the act of 1791; but the essential fact upon which such a claim must rest, to wit, that the mortgagor had gone out of possession, was distinctly denied in the answer, and therefore it is quite clear that it could not be said that the plaintiff had established even *prima facie* that source of title. Second. The plaintiff rested his claim of title upon the sale under the power contained in the mortgage.

Now while it is true that the defendant admitted the allegations that the land was offered for sale under that power and bid off by Mayer; that plaintiff executed a deed to Mayer, and that on the same day Mayer executed a deed to plaintiff, he distinctly denied that plaintiff thereby acquired title, because he says that the sale to Mayer was merely sham and pretensive, and

thus an issue was presented as to whether the plaintiff had established his title through the second source from which he claimed to derive title, which issue was properly triable by a jury. For it is well settled that even though a defendant might admit the execution of a deed relied upon by the plaintiff as one of the links in his chain of title, such admission did not preclude him from showing in a court of law, when the jurisdictions were distinct and separate and exercised by different tribunals, that title did not pass thereby because of fraud or some other sufficient reason; courts of law having had concurrent jurisdiction with courts of equity in some cases of fraud.

Again, it will be observed that, after stating that the land was offered for sale under the power contained in the mortgage and bid off by Mayer, the plaintiff alleges that "he executed and delivered to the said O. B. Mayer, Jr., his deed in fee-simple of said land, a copy of which deed is herewith exhibited," and this allegation is admitted in the answer in this form, that the "said George G. DeWalt executed his deed to said land to the said O. B. Mayer, Jr., and that said deed is correctly exhibited with the complaint." Now if this allegation be taken as strictly true in the form in which it is made, it is very clear that no title passed to Mayer; and, if so, none from Mayer to the plaintiff; for it is well settled that in making a deed under a power of attorney, it must be in the name of the principal and not in the name of the attorney, (*Webster* v. *Brown and Hammett*, 2 *S. C.* 428,) and, therefore, in order to pass the title of the mortgagor, Andrew Kinard, it must be done by his deed through his attorney, and not by the deed of George G. DeWalt. If the plaintiff made "his deed," as he alleges, and not the deed of Andrew Kinard by George G. DeWalt as his attorney in fact, no title passed thereby to Mayer, and of course Mayer could convey none to the plaintiff. We are not, however, disposed to rest the case upon this point, as there is no copy of the deed before us, for although exhibited with the complaint it is not embraced in the "Case," and it may be that if we had the deed before us, we would find that the language used in the pleadings was a loose and inaccurate statement of the form of the deed.

It seems to us, therefore, that whether the plaintiff relied

upon the one source of title or the other, an issue was presented which the defendant had a right to have tried by a jury.

It is true that the complaint, besides demanding judgment for the recovery of the possession of the land, which was strictly legal relief, also demanded relief of an equitable character, by injunction, but there was no prayer for the appointment of a receiver, which was in effect done by requiring the rents then due to be paid to the master, and directing that officer to take possession of the land and lease it from year to year during the pendency of the litigation; and, of course, any issues arising on this branch of the case could be either tried by the court or referred to the master. The absence of any prayer for the appointment of a receiver would not prevent the court from granting that mode of relief, provided the case made properly warranted the granting of such relief. But we do not think that such a case was made by the pleadings, and the motion was heard only on the pleadings. The case made was that of a plaintiff, under claim of title, seeking to recover real property alleged to be in the possession of another, by himself and by his tenants, with an allegation that defendant was insolvent, and "that there is danger that the said rental will be lost to the plaintiff unless the same is protected by this honorable court until the judgment herein be rendered," while the defendant denies that title is in the plaintiff, denies that he is insolvent, and denies that there is any danger of loss of the rents. This certainly does not make a case warranting the appointment of a receiver, depriving the defendant of the possession of the land and impounding the rents.

A person in possession of real property is presumed to have title until the contrary appears, and we do not see by what authority he can be deprived of such possession until the question of title has been tried, even though it should be made to appear, *prima facie*, that he was insolvent. But we cannot agree that the pleadings made any such *prima facie* showing. As we have said, the allegation of insolvency was distinctly denied, and the inference drawn by the Circuit judge from the contents of paper filed as *Exhibit A.* to the answer of George A. Kinard, that said Kinard was insolvent at the date of that paper—fifteen years before—was not sufficient, in our judgment, to rebut the

positive denial of the answer, especially when the inference drawn from the paper, that George A. Kinard was insolvent because he was then burdened with obligations which rendered it unsafe for him to hold property in his own name, was met by the fact that on December 18th, 1877, he did take title in his own name for an undivided half of this land. For, although George A. Kinard may have been insolvent in 1865, just at the close of a disastrous war, it by no means followed that he was in the same condition fifteen years afterwards, especially when he swears he was not insolvent, and when it appears that the fact upon which the inference of insolvency in 1865 was based, to wit: his inability to hold property in his own name, had ceased to exist nearly three years before this action was commenced. We think, therefore, that the conclusion of the Circuit judge, that the insolvency of George A. Kinard was made to appear *prima facie*, if not without any evidence to sustain it, was certainly against the manifest weight of the evidence.

The fifth ground of appeal cannot be sustained. While it is undoubtedly proper that when a receiver is appointed he should be required to give bond, we are not aware of any statute or rule of law which requires that a bond should be exacted from a plaintiff before granting an order for the appointment of a receiver. Inasmuch as the master, a bonded officer of this court, was in the case made practically, though not nominally, receiver, we see no necessity for requiring a special bond from him.

We think, however, that the sixth ground of appeal is well taken, for, while it is true that when a case has been heard upon the merits, the judge before whom it is heard may grant such relief as in his judgment the plaintiff has shown himself legally or equitably entitled to demand, whether such relief is formally demanded or not, yet when a motion is made preliminary to the hearing of a case upon the merits, it seems to us that there is error in going beyond what the party is notified will be asked for, as it may be that he would not desire to oppose the granting of that, but would be disposed to contest the granting of anything more unless it appeared, as it does not in this case, that the party was present at the hearing and decision of the motion

and had an opportunity of being heard upon the question of granting such further relief.

From what we have said, it follows that there was error in referring the whole case to the master to take the testimony and report the same to the court, for on all the legal issues the defendant has a right to have the witnesses examined before a jury, except such witnesses as under statutory provisions may be examined by commission; for, even when testimony is taken by the clerk, under the act of 1872 (15 *Stat.* 41), the statute secures to either party the right to require the personal attendance and *viva voce* examination at the trial of the witnesses so examined.

It is true that the affirmative defense set up by the defendant George A. Kinard, that his equitable title arising out of the terms of the paper filed with his answer as *Exhibit A.*, connected with his legal title arising out of the deed of December 18th, 1877, was superior to the lien of the mortgage through which the plaintiff claimed, as one of his sources of title, was a defense of an equitable character, and any testimony for or against that defense could properly be taken by the master even without the consent of the defendant.

The plaintiff, at the conclusion of his argument, takes the position that "this appeal cannot be sustained because none of the points involved were presented to or considered by the court below." If this position could be established, then it would follow that a party who, from any cause, was prevented from being heard in the Circuit Court and presenting his views before that court, could not be heard here, no matter what might be the errors in the judgment which he desired to appeal from. In this case the appellant has taken his exceptions to the judgment below in the manner prescribed by law, and upon such exceptions he has a right to be heard here even though the points made by such exceptions were not made before the Circuit Court. What we are called upon to do is to review the judgment or order appealed from, and if the appellant, by exceptions properly taken, is able to show any error therein, he is entitled to have such error corrected.

This case differs from the case of *Kaminer* v. *Hope,* 18 *S. C.*

561, in this respect: There the exceptions pointed only to errors of omission on the part of the Circuit judge, while here the exceptions relate solely to errors of commission. They do not complain, as in *Kaminer* v. *Hope,* that the Circuit judge overlooked or omitted any point which should have been considered, but they allege errors in deciding the points presented by the pleadings, and are, in fact, exceptions to the rulings of the Circuit judge, taken in proper time and in proper form.

The judgment of this court is that the order appealed from be reversed, and that the case be remanded to the Circuit Court for such further proceedings, in conformity to the views herein announced, as may be necessary.

Mr. Chief Justice Simpson concurred.

Mr. Justice McGowan. I concur in this judgment in so far as it gives to the defendant George A. Kinard the right of trial by jury. But I am unable to concur in so much of it as sets aside the order of the Circuit judge, requiring the master to let the premises from year to year, and hold the money and securities arising therefrom until the final determination of the action. That order was in the nature of one appointing a receiver for the purpose of preserving the rents and profits during the litigation. Such orders are generally salutary in their operation. The judge who was present on the Circuit and heard the case decided that the *prima facie* showing made for such an order was sufficient, and it seems to me that it should not be reversed as error of law, as it could only have the salutary effect of preserving the issues of the property pending litigation, then to be delivered to that party who may finally be decided to be entitled to the same.

Judgment reversed.