Josee LAKE, a minor by her natural parents and natural guardians, Claude Lake and Francine Lake, and Claude Lake and Francine Lake, in their own right, 8603 Henri-Julien Street Montreal, Canada, Plaintiffs,

v.

RICHARDSON–MERRELL, INC., c/o C. T. Corporation Union Commerce Building Cleveland, Ohio 44115, Defendant.

Gilles HEBERT, et al., Plaintiffs,

v.

RICHARDSON–MERRELL, INC., Defendant.

Omer COLLINS, et al., Plaintiffs,

v.

RICHARDSON–MERRELL, INC., Defendant.

Paul HADDAD, et al., Plaintiffs,

v.

RICHARDSON–MERRELL, INC., Defendant.

Marcel MORIN, et al., Plaintiffs,

v.

RICHARDSON–MERRELL, INC., Defendant.

Nos. C80–561, C80–569, C80–620, C80–1722 and C80–1723.

United States District Court, N. D. Ohio, E. D.

April 26, 1982.

Donald P. Traci, Spangenberg, Shibley, Traci & Lancione, Cleveland, Ohio and Arthur Raynes, Raynes, McCarty, Binder & Mundy, Philadelphia, Pa., for plaintiffs.

R. Crawford Morris, Arter & Hadden, Cleveland, Ohio and Peter N. Perretti, Jr., Morristown, N. J., for defendant.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

Four days after this Court issued an order denying the defendant's motion to dismiss the five cases at bar on the ground of *forum non conveniens*,[1] the Supreme Court, in *Piper Aircraft Co. v. Reyno*, —— U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), reviewed the application of the doctrine of *forum non conveniens* to foreign plaintiffs. The defendant then filed a motion to reconsider this Court's order, on the ground that the Court had relied heavily on the Third Circuit's opinion in *Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3d Cir. 1980), which the Supreme Court had reversed.

Because the Supreme Court's opinion deals with almost precisely the same issue that these five cases present, the Court granted the motion to reconsider and held oral argument on February 10, 1982. Having reviewed its prior order in these cases, the Supreme Court's opinion in *Reyno*, and the extensive briefs submitted by the parties for the motion to dismiss and the motion to reconsider, the Court again denies the defendant's motion to dismiss on the ground of *forum non conveniens*, but modifies its order of December 4, 1981 (as modified by its January 5, 1982 order) as follows:

Josee Lake, Gilles Hebert, Omer Collins, Paul Haddad, Marcel Morin, and the parents of each instituted actions in this Court against Richardson-Merrell, Inc. (hereinafter RMI), to recover damages for injuries allegedly suffered as a result of the alleged ingestion by the mothers of these five plaintiffs of thalidomide and/or bendectin, so-called morning sickness drugs sold and distributed by RMI. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332 (1976). RMI has filed a motion to dismiss all five cases on the ground of *forum non conveniens*.[2] Because it has failed to show that the proposed alternative forums are more convenient than this Court, RMI's motion to dismiss for *forum non conveniens* is denied.

---

1. In an order it issued December 4, 1981, the Court denied the defendant's motion to dismiss these five cases and *Boucher v. Dow Chemical Co.*, No. C81–1884 (N.D.Ohio, filed Sept. 17, 1981), on the ground of *forum non conveniens*. By order of January 5, 1982, the Court set aside the December 4 order inasmuch as it applied to the case of *Boucher v. Dow Chemical Co.* Counsel for the plaintiffs, in the Memorandum of Law Opposing Defendant's Motion for Reconsideration and for § 1292(b) Certification of

This Court's ·Order of December 4, 1981, includes *Boucher* with the other five cases which were denied dismissal. This opinion disposes of the *forum non conveniens* motion only with regard to the five above-captioned cases.

2. The defendant has also filed a motion for summary judgment in the *Lake* and *Hebert* cases. The Court will consider these motions at a later time.

## I. Factual Background and Arguments of the Parties

The plaintiffs are citizens of Canada. Josee Lake, Paul Haddad, Marcel Morin, and their parents currently reside in Quebec; Gilles Hebert and his parents, in New Brunswick; and Omer Collins and his parents, in Ontario.

Each of the children-plaintiffs was born in the early 1960s with birth defects, which the plaintiffs have alleged were proximately and actually caused by thalidomide and/or bendectin, drugs the mothers allegedly ingested when pregnant with the children. Josee Lake and Gilles Hebert were born in Quebec; Omer Collins and Paul Haddad, in Ontario; and Marcel Morin, in Saskatchewan. The plaintiffs based their claims against RMI on theories of negligence, strict liability, breach of implied and express warranties, and wanton recklessness. RMI denied or claimed a lack of information or belief as to these allegations.

RMI filed motions to dismiss each case for *forum non conveniens*, arguing that the factors to be balanced under this doctrine justified a finding that the Canadian courts are a more convenient forum than this Court.[3] The defendant concluded that, "in the instant matter there is no necessity to engage in an end process of weighing, balancing, and tallying." Brief in Support of Defendant's Motion to Dismiss on the Ground of Forum Non Conveniens at 46, *Lake v. Richardson-Merrell, Inc.*, No. C80–561 (N.D.Ohio, filed April 14, 1980) (hereinafter cited as Defendant's Brief).[4]

The plaintiffs responded, in essence, that since the factors to be balanced did not weigh heavily in the defendant's favor, the Court should not disturb the plaintiffs' choice of forum.[5] They urged, "This Court *should* summarily determine that this Ohio defendant ... is answerable in Ohio." Brief in Opposition to Motion to Dismiss on Grounds of Forum Non Conveniens at 9–10 (hereinafter cited as Plaintiff's Brief).

■ While both sides have presented strong arguments for the disposition of this motion, they are both wrong to urge the Court to decide the issue summarily. The doctrine of *forum non conveniens* implicates matters of private concern and public policy that a court must carefully balance to determine whether to keep an action or to dismiss it, not because jurisdiction is lacking, but because another forum is more appropriate.

## II. The Doctrine of Forum Non Conveniens

In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court, acknowledging that the doctrine of *forum non conveniens* is applicable in the federal courts, described the factors that a district court judge should weigh to dispose of such a motion. The federal courts have not clearly decided whether the factors are to be weighed in accordance with state law or federal common law, but where, as in Ohio, the law is similar in both jurisdictions, the question need not be decided. *See id.* at 509, 67 S.Ct. at 843.

---

**3.** RMI argued (1) that it is amenable to service of process in the alternative forums; (2) that essential and relevant sources of evidence are in the alternative forums; (3) that the defendant cannot join proper parties in this forum, but could do so in the alternative forums; (4) that the Court should, pursuant to Ohio choice of law principles, apply the substantive law of the alternative forums; (5) that the Court should not give as much weight to the choice of forum of alien plaintiffs as it would give to plaintiffs from the United States; and (6) that the cases would present an unwarranted administrative burden on this Court. All these arguments are relevant matters that the Court must balance against those for maintaining the plaintiffs' choice of forum.

**4.** RMI made essentially the same arguments for dismissing all five cases. The Court will point out any differences that it has found significant.

**5.** The plaintiffs contended, *inter alia*, (1) that the wrongful conduct alleged occurred in Ohio; (2) that Ohio has a "substantial public interest" in the litigation; (3) that the plaintiffs' choice of forum should not be disturbed unless the balance of factors weighs heavily in the defendant's favor; (4) that the majority of relevant evidence is in Ohio; (5) that the plaintiffs did not choose this forum to vex or harass the defendant; and (6) that the Court should apply Ohio law in these cases.

According to this doctrine, a court may reject jurisdiction in a case even where jurisdiction is authorized by a general venue statute. But unless the factors weigh heavily in the movant's favor, the district judge, who has wide discretion to dismiss or keep a case, should not dismiss a case on this basis. *Id.* at 507–08, 67 S.Ct. at 842–43.

■ RMI has contended, citing *Ionescu v. E. F. Hutton & Co.*, 465 F.Supp. 139, 143 (S.D.N.Y.1979), that the choice of forum of foreign plaintiffs is entitled to less weight than the choice of a resident of the United States. Defendant's Brief, *supra*, at 23. Although the circuits had been divided on the issue, the Supreme Court recently upheld this position. While it noted that when a resident or citizen chooses a home forum, "it is reasonable to assume that this choice is convenient," the Court concluded that "[w]hen the plaintiff is foreign, . . . this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Piper Aircraft Co. v. Reyno*, — U.S. at —, 102 S.Ct. at 266.

Because the allegedly more convenient forums in these cases are not within the federal judicial system, the Court can only either (1) keep the cases or (2) dismiss them with or without prejudice and/or with conditions, *e.g.*, that the movant submit to service of process in the forum it alleges is more convenient. *See, e.g., id.; Hoffman v. Goberman*, 420 F.2d 423, 425 (3d Cir. 1970).[6]

■ To move for dismissal on the ground of *forum non conveniens*, a defendant must first show that there is at least one alternative forum in which it may be sued. *Piper Aircraft Co. v. Reyno*, — U.S. at — n.22, 102 S.Ct. at 265; *see Gulf Oil Corp. v.*

*Gilbert*, 330 U.S. at 506–07, 67 S.Ct. at 842. Although the defendant can usually meet this requirement when he is "amenable to process" in the other jurisdiction, occasionally "where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative . . . ." *Piper Aircraft Co. v. Reyno*, — U.S. at — n.22, 102 S.Ct. at 264 n.22.

■ Once the defendant has shown the existence of an alternative forum, it must make a compelling showing that the alternative forum is more convenient than the one the plaintiff chose. Where a foreign plaintiff has chosen a United States court, however, the defendant's burden is somewhat lighter. *See id.* at —, 102 S.Ct. at 268.

■ The Supreme Court, in *Gilbert*, explained that, to decide a *forum non conveniens* motion, a court must first consider private factors that affect the parties themselves, and then the public factors, which involve court administration. No one factor by itself is dispositive of the motion, and unless the defendant shows that retaining jurisdiction will cause manifest injustice, the court should not dismiss the case. *Hoffman v. Goberman*, 420 F.2d at 428; *see Norwood v. Kirkpatrick*, 349 U.S. 29, 31, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). Balancing the factors is entrusted to the sound discretion of the district judge, whose decision on such a motion will not be overturned unless he clearly has abused his discretion. *Piper Aircraft Co. v. Reyno*, — U.S. at —, 102 S.Ct. at 266; *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 507–08, 67 S.Ct. at 842–43.

■■ The private factors, which involve the "advantages and obstacles" to a fair trial, include:

---

**6.** These cases do not involve 28 U.S.C. § 1404 (1976), which provides for transfer of a case from one U. S. District Court to another, more convenient one. Congress adopted this provision several years after the *Gilbert* decision, but did not intend to supplant the doctrine of *forum non conveniens* where the terms of the statute did not apply. *Yerostathis v. A. Luisi, Ltd.*, 380 F.2d 377, 379 (9th Cir. 1967). To

move for transfer of a case under § 1404, the defendant need not make as strong a showing as is required for a motion to dismiss for *forum non conveniens*. This difference arises because the result under the latter doctrine could be harsher than that under the statute. *Norwood v. Kirkpatrick*, 349 U.S. 29, 31–32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955).

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.

In weighing these factors, the court should consider whether the plaintiff chose an inconvenient forum to vex or harass the defendant "by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." *Id.* at 508, 67 S.Ct. at 843. In addition, the court must weigh the following factors of public interest: "administrative difficulties" of hearing litigation in "congested centers" rather than at "its origin"; the imposition of jury duty on people in a community with no relation to the litigation; the "local interest in having localized controversies decided at home;" and, in diversity cases, the choice of law to be applied in the case. *Id.* at 508–09, 67 S.Ct. at 843.

### III. *The Doctrine Applied*

■ Having carefully weighed the relevant factors, the Court finds that the balance favors retaining jurisdiction over the five cases. Although RMI has presented some arguments for dismissing the cases for *forum non conveniens*, the plaintiffs have shown the convenience of this forum to them, and the defendant has failed to meet the burden required to upset the plaintiffs' choice.

### A. *The Existence of an Alternative Forum*

■ RMI has agreed to accept service of process in the Canadian province in which

each plaintiff resides. Where, as in *Collins, Haddad,* and *Morin,* a defendant has consented to suit in another jurisdiction in which the plaintiffs have a cause of action, the Court must then examine the other factors to determine whether the alternative forums are the appropriate place for trying the cases. *See Farmanfarmaian v. Gulf Oil Corp.,* 588 F.2d 880, 882 (2d Cir. 1978).

The *Lake* and *Hebert* cases, however, raise the issue of whether an alternative forum in which the defendant may be sued exists. In *Piper Aircraft Co. v. Reyno,* —— U.S. at —— n.22, 102 S.Ct. at 265 n.22, the Supreme Court noted, "In rare circumstances, . . . where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." [7]

Although the Supreme Court has said that a district judge may give strong consideration to an extremely unfavorable change in substantive law, *id.* at ——, 102 S.Ct. at 264, it is unclear whether this factor should come into play (1) in the preliminary determination of whether an alternative forum exists in which the defendant may be sued, *see id.* at —— n.22, 102 S.Ct. at 265 n.22, (2) in balancing the private and public factors to determine which forum is more convenient, or (3) at both stages of the inquiry.

■ If a court were to examine an unfavorable change in law to determine whether an alternative forum exists, it would then seem redundant to re-examine it when balancing the private and public factors. Once a court has determined that no alternative forum exists because the

7. The Court had held that it is error to deny a *forum non conveniens* motion merely on the ground "that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum." *Piper Aircraft Co. v. Reyno,* —— U.S. at ——, 102 S.Ct. at 261. It explained: "The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non con-* *veniens* inquiry." *Id.* The Court did not hold that an unfavorable change in substantive law should never be given any weight in the *forum non conveniens* analysis. In fact, it stated, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight . . ." *Id.* at ——, 102 S.Ct. at 265.

remedy therein is "so clearly inadequate or unsatisfactory that it is no remedy at all," it has no reason to proceed to the balancing process. If a court determines that the plaintiff does have some sort of recourse in an alternative forum, then the court should not reconsider the unfavorable change in law when it balances the private and public *forum non conveniens* factors because the change would not be unfavorable enough to consider. *See id.* at ———, 102 S.Ct. at 262.

It seems more appropriate to consider an unfavorable change in law during the preliminary determination of whether an alternative forum exists. The Supreme Court, in *Reyno*, explained that, since the central focus of the doctrine of *forum non conveniens* is convenience, a change in substantive law ordinarily should not enter into the balance. "If substantial weight were given to the possibility of an unfavorable change in law, dismissal might be barred even where trial in the chosen forum was plainly inconvenient." *Id.* at ———, 102 S.Ct. at 262.

On the other hand, in its discussion of when a court may consider an unfavorable change of law, the Supreme Court also implied that a district court should consider a very unfavorable change of law when balancing all the factors. The Court stated that where the law in the alternative forum

is so unsatisfactory as to provide no remedy at all, "the district court may conclude that dismissal would not be in the interests of justice." *Id.* at ———, 102 S.Ct. at 265.[8]

The difficulty of resolving such an issue presents practical problems that the doctrine of *forum non conveniens* is designed to avoid. "The doctrine of *forum non conveniens* ... is designed in part to help courts avoid conducting complex exercises in comparative law."[9] But because the Supreme Court has, at the very least, implied that a very unfavorable change in substantive law should be considered at both stages, this Court will examine the law of the alternative forum in *Lake* and *Hebert* at both this preliminary stage (which appears to be the more appropriate place) to determine whether an alternative forum exists and at the balance stage to determine which forum is more convenient.

In both *Lake* and *Hebert*, the plaintiffs apparently will have no cause of action in the other jurisdictions in which RMI argues that their cases should have been brought. In each case, the defendant has filed a motion for summary judgment on the ground that Quebec law, which it argues should be applied in these cases, has a one year prescription on actions of this kind that cannot be waived and is not tolled for minors. Brief in Support of Defendant's

8. The "interests of justice" standard hardly seems applicable to determining whether an alternative forum exists. Either the plaintiffs have an alternative forum or they do not. And they have no alternative forum only when the remedy provided by the substantive law in the other forum "is so clearly inadequate or unsatisfactory that it is no remedy at all...." To use "the interests of justice" standard in deciding whether the substantive law of another forum provides an adequate remedy so that the forum is an alternative, a court would have to enter into an analysis of the merits of the case and the relative strengths of the substantive law of the two jurisdictions. But this seems to be exactly what the Supreme Court holds that the *forum non conveniens* analysis does not and should not involve. *Id.* at ———, 102 S.Ct. at 262. Thus, this standard could only be applicable in balancing a very unfavorable change of law with the other factors.

9. The Supreme Court explained this problem as follows:

If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of *forum non conveniens* would become quite difficult. Choice-of-law analysis would become extremely important, and the courts would frequently be required to interpret the law of foreign jurisdictions. First, the trial court would have to determine what law would apply if the case were tried in the chosen forum, and what law would apply if the case were tried in the alternative forum. It would then have to compare the rights, remedies, and procedures available under the law that would be applied in each forum. Dismissal would be appropriate only if the court concluded that the law applied by the alternative forum is as favorable to the plaintiff as that of the chosen forum.

*Piper Aircraft Co. v. Reyno,* ——— U.S. at ———, 102 S.Ct. at 263.

Motion for Summary Judgment, *Lake v. Richardson Merrell, Inc.*, No. C80–561 (N.D. Ohio, filed Dec. 2, 1980) (hereinafter *Lake* Summary Judgment Brief); Brief in Support of Defendant's Motion for Summary Judgment, *Hebert v. Richardson Merrell, Inc.*, No. C80–569 (N.D.Ohio, filed Jan. 16, 1981).

According to the defendant's expert in Quebec law, who submitted an affidavit and memorandum with the motion for summary judgment,

> The rules of prescription embodied in the articles of the Quebec Civil Code which apply to the present action are rules of substantive law in Quebec and have been consistently characterized by the highest Courts having jurisdiction in Quebec as terminating the existence of the right rather than simply barring the remedy. This characterization of such short prescriptions by Quebec Courts is firmly established and fixed in Quebec law and is a matter not open to dispute.

Affidavit of Paul-A. Crepeau, Q.C., ¶ 14. Mr. Crepeau explained: "The prescriptions of Article 2260(a) [Quebec Civil Code] and of Article 2262 [Quebec Civil Code] operate as a substantive extinguishment of all right of action. These prescriptions operate automatically and, even if not pleaded, will be applied *proprio motu* by the Courts." Memorandum in Support of the Affidavit of Paul-A. Crepeau, Q.C., ¶ C.

■ The prescription in Quebec is not in the nature of a statute of limitations, which procedurally bars a remedy and can be waived by the party who could use it as a defense.[10] It is an absolute substantive bar to a cause of action that a court must invoke even if the defendant does not raise it as a defense. *Canadian Pacific Ry. v. Robinson*, 19 S.C.R. 292 (1891); Affidavit of Paul-A. Crepeau, Q.C., ¶ 13; *see Lake* Summary Judgment Brief, *supra*, at 33–34.[11]

The issue the Court must resolve is whether the remedy under Quebec law is so clearly inadequate as to be no remedy at all. At the time that both *Hebert* and *Lake* were filed, the plaintiffs had no cause of action under Quebec law. Any cause of action was extinguished one year after each was born.

During oral argument, counsel for defendant contended that the exception to the general rule in *Reyno* that courts should not consider unfavorable changes in substantive law does not apply to these cases. According to the defendant's counsel, the Supreme Court was only referring to cases where the other jurisdiction does not provide any cause of action for the issue brought in the United States forum. Where the plaintiff had a remedy in another forum but let it pass, counsel argued, the other forum is an alternative no matter how unfavorable the substantive law.

**10.** Mr. Crepeau, the defendant's expert cited *Canadian Pacific Ry. v. Robinson*, 19 S.C.R. 292, 306 (S.Ct.1891) (emphasis added by Mr. Crepeau), for this explanation:

> Then it is to be observed that whilst the English Statutes of Limitations only bars [*sic*] the remedy, leaving the right still subsisting, *here* the article 2262 is not merely a bar to the remedy but an actual extinguishment of the obligation arising from the *delict*, for the article 2267 expressly provides that in "all the cases mentioned in articles 2250, 2260, 2261 and 2262 the debt is absolutely extinguished and no action can be maintained after the delay for prescription has expired. If, therefore, the bar of the remedy by the Statute of Limitations would constitute a defence in England a fortiori must be the prescription of the article 2262, *which not merely bars the remedy but is extinctive of the obligation, so operate in the Province in Quebec*.

**11.** Counsel for the defendant, during oral argument, attempted to draw a parallel between the Quebec prescription and the short statutes of limitations under the Federal Tort Claims Act and the Jones Act. He argued in essence that, if the Court held that, because of the prescription, dismissal is not in the interests of justice, then the Court would be setting a precedent with regard to these federal, and other states, statutes. As the defendant's own expert has emphasized, however, the statutes of limitations are different from prescriptions in that a party may waive the statute, and the court may not invoke the statute to dismiss an action *sua sponte*. One reason for this difference appears to be that a prescription statute totally extinguishes the cause of action to which it applies while the statute of limitations only bars the remedy. Affidavit of Paul-A. Crepeau, Q.C. ¶ 14.

But the language the Supreme Court used did not so limit the exception to this rule. The Court explained that "where the alternative forum does not permit litigation of the subject matter of the dispute," a court might find that no alternative exists. *Id.* at 22.[12] It did not say that whenever an alternative forum provides any remedy at all, a district court must find that an alternative forum exists. The district court determines whether "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all," and in doing so it must examine the remedy provided by the alternative forum in conjunction with all the circumstances of the case.

The Court concludes that, because of the one year prescription under Quebec law on actions of the type brought before this Court, the plaintiffs in *Lake* and *Hebert* have no alternative forum in which they may bring an action against the defendant. The prescription statute barred any action by Gilles Hebert, Josee Lake or their parents one year after Gilles and Josee were born. The remedy that the law of Quebec provided amounted in this case to virtually no remedy at all. Where no alternative forum exists, the court may deny the defendant's motion to dismiss for *forum non conveniens* and need not consider the private and public factors to determine which forum is more convenient. But because it is unclear whether the court should only consider an unfavorable change in law at this preliminary stage, the court will consider the public and private factors in the *forum non conveniens* balance for *Lake* and *Hebert* as well as for *Morin, Haddad*, and *Collins.*

## B. *Factors Involving the Private Interests of the Litigants*

1. *Availability of witnesses and sources of proof.* The defendant has contended that significant witnesses and other sources of proof are located in the Canadian provinces in which the plaintiffs reside. For example, in *Lake*, RMI has listed 42 possible "witnesses having knowledge of [Josee Lake's] condition," and has provided very brief excerpts of what four witnesses could testify to. Defendant's Brief, *supra*, at 27–29. It further maintains that evidence regarding Mrs. Lake's alleged ingestion of thalidomide or bendectin, RMI's actions with regard to the Canadian Food and Drug Directorate, the plaintiffs' family genetic history, and the mother's health and use of other drugs during pregnancy are in Canada. RMI has made essentially the same showing in each of the other four cases.

Much of this evidence, RMI has argued, is not subject to compulsory process in this Court. And, with regard to the plaintiffs from Quebec, it has argued that proof will be difficult because much of the evidence is in a foreign language.

The plaintiffs, on the other hand, have maintained that most of the relevant evidence with regard to liability and damages is in Ohio. They argue that, since the nature of the deformity of each of the children-plaintiffs is so obvious, the jurors will not need assistance from expert witnesses, from Canada or elsewhere, to determine the amount of damages. Plaintiffs' Brief, *supra*, at 17. And, if experts are needed, many would be in the United States. *Id.* at 9. In addition, the plaintiffs, listing several of the defendant's alleged activities that

---

**12.** The Supreme Court supported this position with the following citation:

Cf. *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 78 F.R.D. 445 (DC Del.1978) (court refuses to dismiss, where alternative forum is Ecuador, it is unclear whether Ecuadorian tribunal will hear the case, and there is no generally codified Ecuadorian legal remedy for the unjust enrichment and tort claims asserted).

*Piper Aircraft Co. v. Reyno*, —— U.S. at —— n.22, 102 S.Ct. at 265 n.22. This citation does

not imply that this is the only situation in which a court may find that no alternative forum exists. And the circumstances of *Lake* and *Hebert* present a more compelling case for finding that no alternative forum exists because the remedy is clearly inadequate. Whereas, in *Phoenix Canada Oil*, it was unclear whether the alternative forum would hear the case, in *Lake* and *Hebert*, it is certain that the plaintiffs' causes of action in the alternative forum were extinguished one year after the birth of each child, almost 20 years ago.

they contend go to the issue of liability, state that much of the evidence they present will involve Ohio witnesses and documents produced and maintained in Ohio. *Id.* at 1–3, 15–17.

In its reply brief, the defendant again discusses the sources of proof in Canada and adds that it would "make available at its own expense, any documents or witnesses within its control that will be needed for a fair adjudication of" the plaintiffs' actions. Reply Brief of Defendant in Support of Its Motion to Dismiss on the Grounds of Forum Non Conveniens at 17.

RMI has attempted to show that much of the evidence necessary to its case is in the alternative forums and not easily presentable here. While "[r]equiring extensive investigation would defeat the purpose of the *forum non conveniens* motion . . ., defendants must provide enough information to enable the District Court to balance the parties' interests." *Piper Aircraft Co. v. Reyno,* —— U.S. at ——, 102 S.Ct. at 267; *see Sun Oil Co. v. Lederle,* 199 F.2d 423, 424 (6th Cir. 1952). In *Reyno,* the defendants had submitted affidavits "describing the evidentiary problems they would face if the trial were held in the United States." *Piper Aircraft Co. v. Reyno,* —— U.S. at —— & n.27, 102 S.Ct. at 267 & n.27. In these cases, the defendant has only submitted a list of possibly relevant witnesses outside this district and a few cursory excerpts of what some of them might show. RMI has failed to show the importance of the evidence outside the district and thus the inconvenience that it would undergo if the Court retains jurisdiction.[13]

2. *Ability to join proper parties.* RMI has argued that if this Court retains jurisdiction over these cases, it will be unable to join proper, if not indispensable, parties. For example, in *Collins* it suggests that, in light of a company affidavit that it had withdrawn thalidomide from the Canadian market, the physician who treated Mrs. Collins during her pregnancy would be proper parties. Brief in Support of Defendant's Motion to Dismiss on the Ground of Forum Non Conveniens at 30–31, *Collins v. Richardson Merrell, Inc.,* No. C80–620 (N.D. Ohio, filed April 25, 1980).[14]

In *Hebert,* RMI has asserted that, although joinder of proper parties would not be a problem since an action is pending in a New Brunswick court, a decision to maintain the action in the Northern District of Ohio would result in duplicative and confusing litigation. Brief in Support of Defendant's Motion to Dismiss on the Ground of Forum Non Conveniens at 32–33, *Hebert v. Richardson-Merrell, Inc.,* No. C80–569 (N.D. Ohio, filed April 16, 1980).

While both of these arguments show that retaining these cases in this Court would impose a burden on RMI, they fail to show that this burden outweighs the plaintiffs' reasons for keeping the cases here. RMI has not shown that the *Hebert* action in New Brunswick is moving forward. Conflicting decisions in this and that court are unlikely unless one or the other fails to follow principles of *res judicata.* And the defendant has not shown that it could not obtain complete relief without the joinder

---

**13.** Where courts must decide whether to transfer a case under 28 U.S.C. § 1404 (1976), they have refused to base their decision on which party can produce the longer list of witnesses in the district in which it wants the suit tried.

The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. The emphasis must be on this showing rather than on numbers. One key witness may outweigh a great number of less important witnesses. If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony

will be the application for transfer will be denied.

15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3851, at 270–71 (1976), *cited in Reyno v. Piper Aircraft Co.,* 630 F.2d at 160–61. Since a court may, pursuant to § 1404, grant a motion to transfer on a lesser showing than that required for granting a motion to dismiss for *forum non conveniens, see* n.6 *supra,* it would stand to reason that the rule regarding convenience of witnesses must be more strictly applied when the latter doctrine is involved.

**14.** RMI has made virtually the same contention in three of the other four cases.

in this action of what it alleges to be proper parties. *Cf. Piper Aircraft Co. v. Reyno,* —— U.S. at —— – ——, 102 S.Ct. at 265– 268 (where defendant aircraft company may be able to show that accident was caused by pilot's negligence rather than design defect and could thus be relieved of *all* liability, *i.e.,* where joinder is crucial to company's defense, dismissal for *forum non conveniens* is proper). These cases are not like *Reyno,* in which the defendants, who had moved for dismissal for *forum non conveniens,* had agreed to join as codefendants in a suit that was already pending in a foreign jurisdiction. And no showing has been made in these cases that joinder of the other parties could relieve RMI of all liability.

3. *Other private factors.* The other factors involving the private interests of the litigants either do not apply to these actions or clearly weigh in favor of retaining jurisdiction. The Court will have no trouble enforcing its judgment, and the trial of these actions will not require a view by the fact-finder of any premises in Canada. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843, *cf. Piper Aircraft Co. v. Reyno,* —— U.S. at ——, 102 S.Ct. at 258 (trial would be aided by "familiarity with Scottish topography and . . . easy access to the wreckage").

Having reviewed the private interests proposed by RMI for dismissing these five cases for *forum non conveniens,* the Court finds that they fail to outweigh the heavy preference for retaining the plaintiffs' choice of forum. The plaintiffs have adequately shown the convenience of this forum, and RMI has not shown that the plaintiffs have, through their choice of forum, tried to " 'vex', 'harass', or 'oppress' the defendant by inflicting upon [it] expense or trouble not necessary to [their] own right to pursue [their] remedy." *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843.

The Court cannot, however, make a final determination on the defendant's motion without considering the matters of public interest that underlie it.

C. *The Public Interest Factors*

■ The public interest criteria that the Court must consider in applying the doctrine of *forum non conveniens* include (1) the choice of law; (2) the interest in having "localized controversies" decided "at home" and the relation of this litigation to this district; and (3) matters of court administration. *Id.* at 508–09, 67 S.Ct. at 843.

■ 1. *The choice of law.* In *Gilbert,* the Supreme Court noted, "There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other 'forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 509, 67 S.Ct. at 843. But the mere fact that a court, according to the applicable choice of law rules, will have to apply foreign law does not, by itself, justify dismissal of a case on the ground of *forum non conveniens,* when a balancing of the other factors justifies retention of the cases. *Piper Aircraft Co. v. Reyno,* —— U.S. at —— n.29, 102 S.Ct. at 268 n.29; *Hoffman v. Goberman,* 420 F.2d at 427. If the application of foreign law would present difficulties of translation or of application of unknown legal principles, the court must determine whether these, in conjunction with other, factors compel dismissal. *Piper Aircraft Co. v. Reyno,* —— U.S. at —— & n. 29, 102 S.Ct. at 268 & n. 29.

■ When a federal court sits in diversity, it must apply the conflicts of law principles of the forum state. *Klaxon Co. v. Stentor Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940). Ohio courts apply the rule of *lex loci delicti,* tempered with considerations of public policy and governmental interests. *Michell v. General Motors Corp.,* 439 F.Supp. 24, 27 (N.D.Ohio 1977); *Moats v. Metropolitan Bank,* 40 Ohio St.2d 47, 49, 319 N.E.2d 603, 604 (1974); *Schiltz v. Meyer,* 29 Ohio St.2d 169, 171, 280 N.E.2d 925, 926–27 (1972); *Fox v. Morrison Motor Freight, Inc.,* 25 Ohio St.2d 193, 267 N.E.2d 405, *cert. denied,* 403 U.S. 931, 91 S.Ct. 2254, 29 L.Ed.2d 710 (1971). That the

plaintiffs, if the Court should decide to apply the law of Canada and its provinces, might have less of a chance to recover damages or prevail on the merits than under Ohio law, is not a factor that the Court may ordinarily consider in determining what law to apply. *See Piper Aircraft Co. v. Reyno*, —— U.S. at ——, 102 S.Ct. at 260; *Michell v. General Motors Corp.*, 439 F.Supp. at 27 n.5.

The defendant has argued that, according to Ohio choice of law rules, the Court should, in each case, apply Canadian federal law and the law of the jurisdiction in which each child-plaintiff was born. According to RMI, the Court must reach this result both under the rule of *lex loci delicti* and for reasons of public policy. Relying heavily on *Michell*, it maintains that the place of the wrong is not the place of design or manufacture, but the place where the drug was allegedly ingested. And, because the alleged ingestion occurred in Canada, the defendant argues, the Canadian courts have a greater interest in determining the liability of RMI, under Canadian law. RMI concludes that the difficulty in applying this foreign federal and provincial law should compel the court to dismiss the cases for *forum non conveniens*.

The plaintiffs, on the other hand, have argued that the Court, pursuant to Ohio's conflicts rule, should apply Ohio law. They agree with the defendants about the basic substance of the rule, but differ as to its application. The plaintiffs make no argument about how the rule of *lex loci delicti* should affect the Court's choice of law. Instead, they focus on the governmental interests that, they argue, should compel the Court to apply Ohio substantive law to these cases. These interests include the contacts of RMI's laboratories with Ohio, the continued conduct of the defendant in this state that led to the alleged injuries, and the interest in deterring future misconduct such as that alleged in the plaintiffs' complaints. In support of their contentions, they have cited *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28, 34 n.14 (3d Cir. 1975), in which the court suggested that Ohio might have a more substantial governmen-

tal interest in that thalidomide case than New Jersey, where the case had been brought.

The Court concludes that Ohio law should be applied in these cases. In *Fox v. Morrison Motor Freight, Inc.*, 25 Ohio St.2d at 195, 267 N.E.2d at 406, the Ohio Supreme Court explained:

> Of all the criteria generally set forth for use in the determination of a "choice of laws" (see Cheatham & Reese, Choice of the Applicable Law, 52 Columbia L.Rev. 959), rigid adherence to the rule of *lex loci delicti* has consistently satisfied only two—predictability of results, and ease in the determination of which law to apply. But would rote application of *lex loci delicti*, with its blindness to other operable facts, consistently produce a just result in a wrongful death action where the injuries causing the death of an Ohio resident occur in another. state? We think not. Therefore, in such a case the automatic application of the rule of *lex loci delicti* must be abandoned.

Where a true conflict of laws exists, *i.e.*, where more than one jurisdiction has an interest in the litigation, the court must examine "the law of the place of injury, the law of the forum, and the law of any other state having an interest . . . . [T]he true search in each instance is for substantial state governmental interest. . . ." *Id.* at 199, 267 N.E.2d at 408.

In *Morrison*, the Ohio Supreme Court concluded that, since Illinois, the place of the wrong, had no interest in the litigation, no true conflict of laws arose. Since Ohio had a substantial governmental interest in fair and sufficient compensation of the survivor in a wrongful death action and in the lawful administration of the decedent's estate, the Court held that Ohio law should be applied. *Id.* In *Moats v. Metropolitan Bank*, 40 Ohio St.2d at 49, 319 N.E.2d at 604, the court found that Ohio had substantial governmental interests in the case before it, and the place of the wrong had few or none.

The five cases before this Court present a true conflict of law. Following a strict application of the rule of *lex loci delicti*, the Court might find that the law of the province in which each plaintiff allegedly ingested thalidomide and/or benedectin should be applied. As the defendant argues, that could be seen as the place where the wrong occurred. *See Michell v. General Motors Corp.*, 439 F.Supp. at 27.[15] The Court must examine the governmental interests of the jurisdictions involved.

Ohio has a substantial governmental interest in this litigation, and thus, the cases are different from *Michell*, in which this Court, Judge Thomas presiding, found that Ohio had no interest in the litigation.[16] They also are not analogous to cases in which foreign plaintiffs have chosen a court that has personal jurisdiction over the defendant but in whose jurisdiction none of the relevant events occurred. *Cf. In re British Oral Contraceptive Cases*, No. L–44473–78, at 16–17 (N.J.Super.Ct.Law Div., July 20, 1981) (case involving nationals of the United Kingdom who had filed an action for injuries allegedly sustained from a drug manufactured, marketed and ingested in that country).

■ The purpose of much of the law of torts and products liability is to deter wrongful activity, as well as to compensate the victims thereof and to impose on the proper party the cost of insuring against risks of a certain activity. *Henry v. Rich-*

*ardson-Merrell, Inc.*, 508 F.2d at 33. In *Henry*, the Third Circuit found that New Jersey had no governmental interest in seeing its law applied because "the tortious conduct took place wholly outside of New Jersey...." *Id.* But the court suggested that the plaintiffs in that action "might have proposed an interest in Ohio, where Merrell-National Laboratories are located or in New York where the corporate headquarters of the defendant are located." *Id.* at 34 n.14.

The plaintiffs have suggested several substantial governmental interests that weigh in favor of applying Ohio law. The allegedly wrongful conduct of RMI, according to the plaintiffs, occurred in Ohio, specifically at RMI's Merrell-National Laboratories.[17] The plaintiffs have alleged a continued course of conduct in this state which, they argue, Ohio has a substantial governmental interest in deterring. *See Henry v. Richardson-Merrell, Inc.*, 408 F.2d at 34. In *Michell*, on the other hand, the Court had found that none of the relevant events transpired within its jurisdiction. And in *Reyno*, where the Supreme Court found an insubstantial American interest in the airplane accident that had occurred in Scotland, the plaintiffs had not alleged the same amount or degree of wrongful activity in the American jurisdiction that the plaintiffs have alleged here. *See Piper Aircraft Co. v. Reyno*, ——— U.S. at ———, 102 S.Ct. at 268. In addition, the Court must give

---

**15.** Where plaintiffs have alleged a sustained wrongful course of conduct such as they have alleged here, the place of the wrong is more difficult to determine.

**16.** The Court noted that "absent compelling governmental interests to the contrary," Ohio courts still apply the rule of *lex loci delicti.* It then concluded: "Assuming, as the parties' briefs do, that the infant seat in question was designed and manufactured in Michigan, this court can envision neither Ohio nor Michigan state interests calling for application of the substantive law of torts and product liability of a jurisdiction other than Ontario." *Michell v. General Motors Corp.*, 439 F.Supp. at 27.

**17.** According to the allegations in the plaintiffs' brief, the defendant (1) was headquartered in Ohio when it negotiated its license with Chemie Grunenthal, the German owner of the patent for the drug; (2) "organized, ordered, planned, and conducted clinical studies" of thalidomide here; (3) planned its "New Drug Application" for the U. S. Food and Drug Administration and the Canadian Food and Drug Directorate here; (4) prepared advertising here for thalidomide; (5) claimed to have performed clinical studies here regarding the drug's safety; (6) fraudulently composed a medical journal article here that claimed the drug was safe; (7) synthesized thalidomide into tablets here, and then shipped them to Canada; (8) learned in Ohio of the deformities thalidomide caused; (9) decided here not to issue adequate warnings regarding use of the drug; and (10) decided here to withdraw the drug and organized a plan for its withdrawal from the market. Plaintiff's Brief, *supra*, at 11–12.

weight to the plaintiffs' selection of this Court as their forum. *Moats v. Metropolitan Bank*, 40 Ohio St.2d at 49, 319 N.E.2d at 604.

Canada and the provinces in which each of the children plaintiffs was born have a governmental interest in assuring adequate compensation of victims within their borders and in setting limits on compensation that they view as reasonable. They also have an interest in setting the appropriate standards for regulation of drug manufacture and distribution. *See Harrison v. Wyeth Laboratories*, 510 F.Supp. 1, 4–5 (E.D.Pa.1980).

■ The interests of the federal government and provincial governments of Canada will not be significantly affected by the Court's choice of Ohio law in these cases. The application of Ohio law will further the substantial governmental interest of assuring proper and prudent conduct with regard to products having potentially devastating effects, without jeopardizing the regulatory scheme in Canada relating to manufacture and distribution of drugs and compensation of victims within its borders. Any slight impact on Canadian governmental interests is outweighed by the compelling nature of Ohio's interests.[18]

2. *The interest in having "localized controversies" decided "at home."* The defendant did not suggest this interest as an important consideration in the Court's decision whether to dismiss for *forum non conveniens*. However strong it might be, this interest is clearly outweighed by the factors described above that weigh against dismissal. The plaintiffs have clearly shown that "a sufficient nexus exists between the controversy and the proposed forum to obligate the [court] to expend the time and resources necessary to resolve the matter." *Paper Operations Consultants International, Ltd. v. SS Hong Kong Amber*, 513 F.2d 667, 671 (9th Cir. 1975).

3. *Matters of court administration.* RMI has suggested that because the judges in this district are allegedly overworked, the Court should dismiss these cases. It raises the specter of an increased docket caused by plaintiffs who will institute "imported causes of action...." Defendant's Brief, *supra*, at 45.

■ The docket of this Court will never be so overloaded as to require the dismissal of cases legitimately and correctly brought before it. If the Court finds that, because of unnecessary complexity, a case should more properly have been brought before another court, it may dispose of it accordingly. The factor of court administration holds little weight in determining whether to dismiss these cases for *forum non conveniens*.

Another factor which weighs in favor of retaining jurisdiction over these cases is the interest in having related cases litigated in the same forum. "The interests of justice as well as the convenience of the parties and potential witnesses are not served when a federal case nearly identical to ... other cases pending in a nearby federal jurisdiction is allowed to proceed separately." *Kisko v. Penn Central Transportation Co.*, 408 F.Supp. 984, 987 (M.D.Pa.1976); *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F.Supp. 52, 55–56 (D.Del.1975). Since the Court has determined that the plaintiffs in *Lake* and *Hebert* have no alternative forum in which they could bring their actions and thus must be allowed to proceed here, concerns for judicial economy strongly suggest that the other three cases be maintained here, too.

### D. *Balancing the Factors*

RMI has produced strong arguments for dismissing the five above-captioned cases

---

**18.** *Harrison v. Wyeth Laboratores*, 510 F.Supp. 1 (E.D.Pa.1980), is inapposite. There, the court dismissed for *forum non conveniens*, actions brought by nationals of the United Kingdom against Wyeth for injuries allegedly suffered as a result of the plaintiffs' ingestion of contraceptive pills. The court, in deciding that U.K. law should apply, failed to find any interest, much less a substantial one, in applying Pennsylvania law. In *Wyeth*, the drugs had been produced and distributed outside the United States, in the United Kingdom. *Id.* at 4. Here, the plaintiffs have alleged more substantial activity by the defendant in Ohio.

**276**

for *forum non conveniens*, but they fail to counterbalance the factors that favor maintaining the plaintiffs' choice of forum. Although the defendant will be subjected to some inconvenience in defending these actions in this forum, it does not outweigh the convenience that the plaintiffs have established that this forum presents nor the inconvenience to the plaintiffs that would result from a dismissal of their actions.

In addition, the public factors fall short of compelling dismissal. The Court will be applying Ohio law, and this jurisdiction has a significant interest in this litigation. Moreover, because in *Lake* and *Hebert*, the law in the other forum is so unsatisfactory as to provide no remedy at all, dismissal of these two cases would not be in the interests of justice. *Piper Aircraft Co. v. Reyno,* —— U.S. at ——, 102 S.Ct. at 264.

### Conclusion

For the reasons explained above, the defendant's motion to dismiss these five cases on the ground of *forum non conveniens* is hereby denied. However, because this opinion and order involve "a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation," the Court grants the defendant's motion for permission to file an appeal of this interlocutory order, pursuant to 28 U.S.C. § 1292(b) (1976).

IT IS SO ORDERED.